[926 NYS2d 532]

BANK OF NEW YORK, Respondent, v STEPHEN SILVERBERG et al.,
Appellants, et al., Defendants.

Second Department, June 7, 2011

**APPEARANCES OF COUNSEL**

*Stephen C. Silverberg, PLLC*, Uniondale, for appellants.

*McCabe, Weisberg & Conway, P.C.*, New Rochelle (*Lisa L. Wallace* and *Doron Zanani* of counsel), for respondent.

**OPINION OF THE COURT**

LEVENTHAL, J.

This matter involves the enforcement of the rules that govern real property and whether such rules should be bent to accommodate a system that has taken on a life of its own. The issue presented on this appeal is whether a party has standing to commence a foreclosure action when that party's assignor—in this case, Mortgage Electronic Registration Systems, Inc. (hereinafter MERS)—was listed in the underlying mortgage instruments as a nominee and mortgagee for the purpose of recording, but was never the actual holder or assignee of the underlying notes. We answer this question in the negative.

In October 2006 the defendants Stephen Silverberg and Fredrica Silverberg (hereinafter together the defendants) borrowed the sum of $450,000 from Countrywide Home Loans, Inc. (hereinafter Countrywide), to purchase residential real property in Greenlawn, New York (hereinafter the property). The loan was secured by a mortgage on the property (hereinafter the initial mortgage). The initial mortgage refers to MERS as the mortgagee for the purpose of recording, and provides that the underlying promissory note is in favor of Countrywide.[1] Further, the initial mortgage provides that "MERS holds only legal title to the rights granted by the [defendants] . . . but, if necessary to comply with law or custom," MERS purportedly has the right to foreclose and "to take any action required of [Countrywide]." On November 2, 2006, the initial mortgage was recorded in the office of the Suffolk County Clerk.

On April 23, 2007, the defendants executed a second mortgage on the subject property in favor of MERS, as named mortgagee and nominee of Countrywide. The defendants simultaneously

---

1. The promissory note executed in connection with the initial mortgage is not included in the record.

executed a note in favor of Countrywide, secured by the second mortgage. The promissory note secured by the second mortgage provided that payment would be made to Countrywide, and that Countrywide "may transfer this Note." The second mortgage was recorded in the office of the Suffolk County Clerk on June 12, 2007.

In sections entitled "Borrower's Transfer to Lender of Rights in the Property" set forth in both the initial mortgage and the second mortgage, those documents provide:

> "[The Borrowers] understand and agree that MERS holds only legal title to the rights granted by [the Borrowers] in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

> "(A) to exercise any or all of those rights, [granted by the Borrowers to Countrywide] including, but not limited to, the right to foreclose and sell the Property; and

> "(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

### Consolidation Agreement

Also in April 2007, the defendants executed a consolidation agreement in connection with the property in the sum of $479,000 in favor of MERS, as mortgagee and nominee of Countrywide. Countrywide was the named lender and note holder. The consolidation agreement purportedly merged the two prior notes and mortgages into one loan obligation. The consolidation agreement was recorded in the office of the Suffolk County Clerk on June 12, 2007. The consolidation agreement, as with the prior mortgages, recites that MERS was "acting solely as a nominee for [Countrywide] and [Countrywide's] successors and assigns . . . For purposes of recording this agreement, MERS is the mortgagee of record." Countrywide, however, was not a party to the consolidation agreement.

In December 2007 the defendants defaulted on the consolidation agreement. Meanwhile, on April 30, 2008, by way of a "corrected assignment of mortgage," MERS, as Countrywide's nominee, assigned the consolidation agreement to the Bank of New York, as Trustee For the Benefit of the Certificate Holders,

CWALT, Inc., Alternate Loan Trust 2007-14-T2, Mortgage Pass-Through Certificates Series 2007-14T2 (hereinafter the plaintiff). On May 6, 2008, the plaintiff commenced this mortgage foreclosure action against the defendants, among others.

In June 2008 the defendants moved pursuant to CPLR 3211 (a) (3) to dismiss the complaint insofar as asserted against them for lack of standing. In support of their motion, the defendants submitted, inter alia, the underlying mortgages, the summons and complaint, the second note, and an attorney's affirmation. In the affirmation, the defendants argued, among other things, that the complaint failed to establish a chain of ownership of the notes and mortgages from Countrywide to the plaintiff. In opposition to the defendants' motion, the plaintiff submitted, inter alia, the corrected assignment of mortgage dated April 30, 2008.

### The Order Appealed From

In an order dated September 24, 2008, the Supreme Court denied the defendants' motion, concluding that, prior to the commencement of the action, MERS, as Countrywide's nominee, and on Countrywide's behalf, assigned the mortgages described in the consolidation agreement. Hence, the Supreme Court determined that the plaintiff was the owner of the "consolidated Note and Mortgage" and, thus, the proper party to commence the action.

On appeal, the defendants argue that the plaintiff lacks standing to sue because it did not own the notes and mortgages at the time it commenced the foreclosure action. Specifically, the defendants contend that neither MERS nor Countrywide ever transferred or endorsed the notes described in the consolidation agreement to the plaintiff, as required by the Uniform Commercial Code. Moreover, the defendants assert that the mortgages were never properly assigned to the plaintiff because MERS, as nominee for Countrywide, did not have the authority to effectuate an assignment of the mortgages. The defendants further assert that the mortgages and notes were bifurcated, rendering the mortgages unenforceable and foreclosure impossible, and that because of such bifurcation, MERS never had an assignable interest in the notes. The defendants also contend that the Supreme Court erred in considering the corrected assignment of mortgage because it was not authenticated by someone with personal knowledge of how and when it was created, and was improperly submitted in opposition to the motion.

## MERS

"In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages" (*Matter of MERSCORP, Inc. v Romaine*, 8 NY3d 90, 96 [2006]). MERS was intended to "streamline the mortgage process by using electronic commerce to eliminate paper."[2] MERS's implementation followed the delays occasioned by local recording offices, which were at times slow in recording instruments because of complex local regulations and database systems that had become voluminous and increasingly difficult to search (*see* Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U Cin L Rev 1359, 1366 [2010]).

> "Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system" (*Matter of MERS-CORP, Inc. v Romaine*, 8 NY3d at 96 [footnotes omitted]).

The MERS system facilitated the transfer of loans into pools of other loans which were then sold to investors as securities (*see* Peterson at 1361-1362). MERS delivers savings to the participants in the real estate mortgage industry by allowing those entities to avoid the payment of fees which local governments require to record mortgage assignments (*see* Peterson at 1368-1369).

Lenders identify MERS as nominee and mortgagee for its members' successors and assignees. MERS remains the mortgagee of record in local county recording offices regardless of how many times the mortgage is transferred, thus freeing MERS's members from paying the recording fees that would otherwise be furnished to the relevant localities (*id.*; *see Matter of MERSCORP, Inc. v Romaine*, 8 NY3d at 100). This leaves borrowers and the local county or municipal recording offices unaware of the identity of the true owner of the note, and extinguishes a source of revenue to the localities. According to MERS, any loan registered in its system is "inoculated against

---

2. MERS, About Us, Overview, http://www.mersinc.org/about/index.aspx (last visited Apr. 26, 2011).

future assignments because MERS remains the mortgagee no matter how many times servicing is traded."[3] Moreover, MERS does not lend money, does not receive payments on promissory notes, and does not service loans by collecting loan payments.

## Analysis

Relevant to our determination is the decision of the Court of Appeals in *Matter of MERSCORP, Inc. v Romaine* (8 NY3d 90 [2006]), which held that the Suffolk County Clerk was compelled to record and index mortgages, assignments of mortgages, and discharges of mortgages that named MERS as the lender's nominee or mortgagee of record. In a concurring opinion, Judge Carmen Beauchamp Ciparick specified that the issue of whether MERS has standing to prosecute a foreclosure action remained for another day (*id.* at 100). In a dissent, former Chief Judge Judith S. Kaye posited that the MERS system raised several concerns, including the elimination of the public records which document mortgage loan ownership (*id.* at 100-105).

The principal issue ripe for determination by this Court, and which was left unaddressed by the majority in *Matter of MERSCORP* (*id.*), is whether MERS, as nominee and mortgagee for purposes of recording, can assign the right to foreclose upon a mortgage to a plaintiff in a foreclosure action absent MERS's right to, or possession of, the actual underlying promissory note.

Standing requires an inquiry into whether a litigant has "an interest . . . in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request" (*Caprer v Nussbaum*, 36 AD3d 176, 182 [2006]; *see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]; *Wells Fargo Bank Minn., N.A. v Mastropaolo*, 42 AD3d 239, 242 [2007]). Where, as here, the issue of standing is raised by a defendant, a plaintiff must prove its standing in order to be entitled to relief (*see U.S. Bank, N.A. v Collymore*, 68 AD3d 752, 753 [2009]; *Wells Fargo Bank Minn., N.A. v Mastropaolo*, 42 AD3d at 242). In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced (*see U.S. Bank, N.A. v Collymore*, 68 AD3d at 753; *Countrywide Home Loans, Inc. v Gress*, 68 AD3d 709, 709 [2009]; *Wells Fargo Bank, N.A. v*

---

**3.** *See* MERS, About Us, Overview, http://www.mersinc.org/about/index.aspx (last visited Apr. 26, 2011).

*Marchione,* 69 AD3d 204, 207-208 [2009]; *Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d 674, 674 [2007]; *Federal Natl. Mtge. Assn. v Youkelsone,* 303 AD2d 546, 546-547 [2003]; *First Trust Natl. Assn. v Meisels,* 234 AD2d 414 [1996]).

As a general matter, once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note (*see Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d 674 [2007]; *Smith v Wagner,* 106 Misc 170, 178 [1919] ["assignment of the debt carries with it the security therefor, even though such security be not formally transferred in writing"]; *see also Weaver Hardware Co. v Solomovitz,* 235 NY 321, 331-332 [1923] ["a mortgage given to secure notes is an incident to the latter and stands or falls with them"]; *Matter of Falls,* 31 Misc 658, 660 [1900], *affd* 66 App Div 616 [1901] ["The deed being given as collateral for the payment of the note(,) the transfer of the note carried the security"]).

By contrast, "a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it" (*Merritt v Bartholick,* 36 NY 44, 45 [1867]; *see Carpenter v Longan,* 83 US 271, 274 [1873] [an assignment of the mortgage without the note is a nullity]; *US Bank N.A. v Madero,* 80 AD3d 751, 752 [2011]; *US Bank, N.A. v Collymore,* 68 AD3d at 754; *Kluge v Fugazy,* 145 AD2d 537, 538 [1988] [plaintiff, the assignee of a mortgage without the underlying note, could not bring a foreclosure action]; *Flyer v Sullivan,* 284 App Div 697, 698 [1954] [mortgagee's assignment of the mortgage lien, without assignment of the debt, is a nullity]; *Beak v Walts,* 266 App Div 900 [1943]). A "mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation" (*FGB Realty Advisors v Parisi,* 265 AD2d 297, 298 [1999]). Consequently, the foreclosure of a mortgage cannot be pursued by one who has no demonstrated right to the debt (*id.*; *see* 1 Bergman on New York Mortgage Foreclosures § 12.05 [1] [a] [1991]).

The defendants contend, among other things, that because the plaintiff failed to provide *proof of recording* of the corrected assignment of the mortgage prior to the commencement of the action, it may be inferred that the plaintiff did not own the notes and mortgages prior to that date. However, this particular contention is without merit, as an assignment of a note and mortgage need not be in writing and can be effectuated by physical delivery (*see LaSalle Bank Natl. Assn. v Ahearn,* 59 AD3d 911, 912 [2009]). Moreover, " '[n]o special form or language is necessary to effect an assignment as long as the language shows

the intention of the owner of a right to transfer it' " (*Suraleb, Inc. v International Trade Club, Inc.*, 13 AD3d 612, 612 [2004], quoting *Tawil v Finkelstein Bruckman Wohl Most & Rothman*, 223 AD2d 52, 55 [1996]).

Here, the consolidation agreement purported to merge the two prior notes and mortgages into one loan obligation. Countrywide, as noted above, was not a party to the consolidation agreement. " 'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident' " (*US Bank N.A. v Madero*, 80 AD3d at 753, quoting *U.S. Bank, N.A. v Collymore*, 68 AD3d at 754; *see LaSalle Bank Natl. Assn. v Ahearn*, 59 AD3d at 912). The plaintiff relies upon the language in the consolidation agreement, which provides that MERS was "acting solely as a nominee for [Countrywide] and [Countrywide's] successors and assigns . . . For purposes of recording this agreement, MERS is the mortgagee of record." However, as "nominee," MERS's authority was limited to only those powers which were specifically conferred to it and authorized by the lender (*see* Black's Law Dictionary 1076 [8th ed 2004] [defining a nominee as "(a) person designated to act in place of another, (usually) in a very limited way"]). Hence, although the consolidation agreement gave MERS the right to assign the mortgages themselves, it did not specifically give MERS the right to assign the underlying notes, and the assignment of the notes was thus beyond MERS's authority as nominee or agent of the lender (*see Aurora Loan Servs., LLC v Weisblum*, 85 AD3d 95, 108 [2d Dept 2011]; *HSBC Bank USA v Squitieri*, 29 Misc 3d 1225[A], 2010 NY Slip Op 52000[U] [2010]; *LNV Corp. v Madison Real Estate, LLC*, 2010 NY Slip Op 33376[U] [2010]; *LPP Mtge. Ltd. v Sabine Props., LLC*, 2010 NY Slip Op 32367[U] [2010]; *Bank of N.Y. v Mulligan*, 28 Misc 3d 1226[A], 2010 NY Slip Op 51509[U] [2010]; *OneWest Bank, F.S.B. v Drayton*, 29 Misc 3d 1021 [2010]; *Bank of N.Y. v Alderazi*, 28 Misc 3d 376, 379-380 [2010] [the "party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"]; *HSBC Bank USA, N.A. v Yeasmin*, 27 Misc 3d 1227[A], 2010 NY Slip Op 50927[U] [2010]; *HSBC Bank USA, N.A. v Vasquez*, 24 Misc 3d 1239[A], 2009 NY Slip Op 51814[U] [2009]; *Bank of N.Y. v Trezza*, 14 Misc 3d 1201[A], 2006 NY Slip Op 52367[U] [2006]; *LaSalle Bank Natl. Assn. v Lamy*, 12 Misc 3d

1191[A], 2006 NY Slip Op 51534[U] [2006]; *In re Agard*, 444 BR 231 [2011]; *but see US Bank N.A. v Flynn*, 27 Misc 3d 802 [2010]).

Therefore, assuming that the consolidation agreement transformed MERS into a mortgagee for the purpose of recording—even though it never loaned any money, never had a right to receive payment of the loan, and never had a right to foreclose on the property upon a default in payment—the consolidation agreement did not give MERS title to the note, nor does the record show that the note was physically delivered to MERS. Indeed, the consolidation agreement defines "Note Holder," rather than the mortgagee, as the "Lender or anyone who succeeds to Lender's right under the Agreement and who is entitled to receive the payments under the Agreement." Hence, the plaintiff, which merely stepped into the shoes of MERS, its assignor, and gained only that to which its assignor was entitled (*see Matter of International Ribbon Mills [Arjan Ribbons]*, 36 NY2d 121, 126 [1975]; *see also* UCC 3-201 [1] ["(t)ransfer of an instrument vests in the transferee such rights as the transferor has therein"]), did not acquire the power to foreclose by way of the corrected assignment.

Notwithstanding the foregoing, the plaintiff contends that case law supports its position that MERS has the power to foreclose, where, as here, MERS is identified in a mortgage as nominee and mortgagee for the purpose of recording. In this regard, the plaintiff relies upon *Mortgage Elec. Registration Sys., Inc. v Coakley* (41 AD3d 674 [2007]), wherein this Court held that MERS had standing to foreclose a mortgage. In that case, unlike in the current case, the lender had transferred and tendered the promissory note to MERS before the commencement of the foreclosure action (*id.* at 674). Therefore, we held that MERS had standing to bring the foreclosure action because it "was the lawful holder of the promissory note, and of the mortgage, which passed as an incident to the promissory note" (*id.* [citations omitted]). Although that determination was a sufficient basis upon which to conclude that MERS had standing, we elaborated, stating,

> "further support for MERS's standing to commence the action may be found on the face of the mortgage instrument itself. Pursuant to the clear and unequivocal terms of the mortgage instrument, [the mortgagor] expressly agreed without qualification that MERS had the right to foreclose upon the premises in the event of a default" (*id.* at 675).

According to the plaintiff, *Coakley* indicates that this Court has determined that such broad provisions in mortgages, such as the initial mortgage and second mortgage here, standing alone, grant MERS, as nominee and mortgagee for the purpose of recording, the power to foreclose. On the contrary, the *Coakley* decision does not stand for that proposition. This Court's holding in *Coakley* was dependent upon the fact that MERS held the note before commencing the foreclosure action. In the absence of that crucial fact, the language in the mortgage instrument would not have provided "further support" for the proposition that MERS had the power to foreclose in that case. Furthermore, the language in the initial mortgage and the second mortgage in this case, purportedly granting MERS the right to foreclose, was superseded by the consolidation agreement. Moreover, as discussed above, the broad language relied upon by the plaintiff cannot overcome the requirement that the foreclosing party be both the holder or assignee of the subject mortgage, and the holder or assignee of the underlying note, at the time the action is commenced.

In sum, because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the corrected assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose.

MERS purportedly holds approximately 60 million mortgage loans (*see* Michael Powell and Gretchen Morgenson, *MERS? It May Have Swallowed Your Loan*, New York Times, March 5, 2011), and is involved in the origination of approximately 60% of all mortgage loans in the United States (*see* Peterson at 1362; Kate Berry, *Foreclosures Turn Up Heat on MERS*, Am Banker, July 10, 2007, at 1). This Court is mindful of the impact that this decision may have on the mortgage industry in New York, and perhaps the nation. Nonetheless, the law must not yield to expediency and the convenience of lending institutions. Proper procedures must be followed to ensure the reliability of the chain of ownership, to secure the dependable transfer of property, and to assure the enforcement of the rules that govern real property.

Accordingly, the Supreme Court should have granted the defendants' motion pursuant to CPLR 3211 (a) (3) to dismiss the complaint insofar as asserted against them for lack of standing. Thus, the order is reversed, on the law, and the motion of the

defendants Stephen Silverberg and Fredrica Silverberg pursuant to CPLR 3211 (a) (3) to dismiss the complaint insofar as asserted against them for lack of standing is granted.

FLORIO, J.P., DICKERSON and BELEN, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the motion of the defendants Stephen Silverberg and Fredrica Silverberg pursuant to CPLR 3211 (a) (3) to dismiss the complaint insofar as asserted against them for lack of standing is granted.