Wells Fargo Bank N.A. v Ho-Shing (2019 NY Slip Op 00080)





Wells Fargo Bank N.A. v Ho-Shing


2019 NY Slip Op 00080


Decided on January 8, 2019


Appellate Division, First Department


Tom, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 8, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter, J.P.
Peter Tom
Angela M. Mazzarelli
Ellen Gesmer
Peter H. Moulton, JJ.


380685 6956 

[*1]Wells Fargo Bank N.A., Plaintiff-Respondent,
v
Lawson Ho-Shing also known as Lawson H. Ho-Shing, Defendant-Appellant, Audrey Ho-Shing, et al., Defendants.



Defendant Lawson Ho-Shing appeals from the judgment of foreclosure of the Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered on or about May 18, 2017, bringing up for review an order of the same court and Justice, entered on or about April 6, 2017, which denied his CPLR 5015(a)(3) motion to vacate an order of the same court (Betty Owen Stinson, J.), entered January 28, 2016, which granted plaintiff's motion for summary judgment and/or default judgment on its complaint, and denied defendant's CPLR 3024(b) motion to strike an affidavit of merit.



Lawson Ho-Shing, appellant pro se.
Hogan Lovell, US LLP, New York (Leah Edmunds, David Dunn and Cava Brandriss of counsel), for respondent.



TOM, J.


In this mortgage foreclosure action, Supreme Court granted plaintiff Wells Fargo Bank, N.A.'s unopposed motion for summary judgment and referred the matter to a referee to determine the amount owed under the consolidated mortgage and note. We find that Supreme Court properly denied the motion of pro se defendant Lawson Ho-Shing to vacate the summary judgment order, as both his claim of fraud and his standing defense lack merit (see Aurora Loan Servs., LLC v Taylor (25 NY3d 355, 361 [2015]). We also find that the court properly denied defendant's motion to strike an affidavit pursuant to CPLR 3024(b).
The pertinent facts are undisputed. On November 12, 2005, defendant Lawson Ho-Shing and codefendant Audrey Ho-Shing (defendants) obtained a mortgage loan from nonparty [*2]Fremont Investment & Loan in the principal amount of $432,000. Defendant and Audrey executed a promissory note and mortgage (both also dated November 12, 2005) on their property located at 1312 Needham Avenue in the Bronx; Mortgage Electronic Registration Systems, Inc. (MERS), was the mortgage nominee.
On February 20, 2008, defendants obtained a second loan secured by the property in the amount of $43,338, from plaintiff Wells Fargo. Defendants executed a promissory note and mortgage in connection with the second secured loan, also dated February 20, 2008.
Then, defendants executed a Consolidation, Extension and Modification Agreement (CEMA) on February 20, 2008, under which the 2005 and 2008 mortgage loans were consolidated into a single loan in the principal amount of $471,415, which was secured by the property and payable to Wells Fargo. Under the CEMA, they agreed to keep all promises in the notes and mortgage as consolidated and modified. The CEMA explained that the two notes, identified in Exhibit A to the agreement, were combined and that the parties' rights and obligations were combined into one mortgage and one "loan obligation."
Defendants also executed a consolidated note and a consolidated mortgage that identified Wells Fargo as the payee and mortgagee, respectively. The consolidated note was attached to the CEMA, which provided that it "[would] supersede all terms, covenants, and provisions of the [original] Notes." Similarly, the consolidated mortgage constituted a "single lien" on the property and "[would] supersede all terms, covenants, and provisions of the [original] Mortgages." On October 18, 2010, MERS executed a written assignment of the first mortgage to Wells Fargo.
After May 1, 2010, defendants defaulted on their payment obligations under the consolidated mortgage. Wells Fargo states that it mailed defendants a notice of default and a 90-day pre-foreclosure notice, as required by Real Property Actions and Proceedings Law § 1304, and defendants failed to cure. Although the 90-day notice is not included in the appellate record, the record contains an affidavit of merit and amounts due and owing, signed by Sarah Lee Stonehocker, Wells Fargo's Vice President, Loan Documentation, who averred that she had reviewed the 90-day pre-foreclosure notice sent to defendant by certified and first class mail, confirmed that the notice was filed with the New York State Banking Department, as required, and that a confirmation number was issued.
On or about June 20, 2013, Wells Fargo commenced this foreclosure action by filing a summons, complaint, and notice of pendency. At that time, it was unrefuted that Wells Fargo had physical possession of the consolidated note. Defendants answered, asserting Wells Fargo's lack of standing as an affirmative defense.
In August 2015, Wells Fargo filed a motion for summary judgment, asking that the proceeding be referred to a referee to determine the amount owed under the consolidated mortgage and loan. Wells Fargo states that its motion was supported by copies of the RPAPL 1304 90-day notice mailed to defendant and proof of its filing with the New York State Banking Department pursuant to RPAPL 1306, and an affidavit by Amanda J. Weatherly, setting forth Wells Fargo's standard business practice concerning the mailing of 90-day notices, and stating that it complied with those practices here. Defendant did not oppose the motion.
By order entered January 28, 2016, Supreme Court granted the motion and struck defendants' answer with prejudice, finding that it was "nothing more than a general denial which is insufficient to create an issue of fact" as to default under the consolidated loan. By separate order entered January 28, 2016, the court referred the matter to a referee.
On or about September 1, 2016, Wells Fargo served - but did not file - a motion for judgment of foreclosure and sale supported by the Stonehocker affidavit.
In September 2016 and January 2017, defendant filed a motion to strike the Stonehocker affidavit under CPLR 3024(b), arguing that it was "impertinent, immaterial, scandalous, and a [*3]deliberate fraud," and separately moved to vacate the summary judgment order and order of reference under CPLR 5015(a)(3), arguing that Wells Fargo lacked standing to foreclose because the first mortgage assignment was invalid. Defendant contended that Wells Fargo "inten[ded] to deceive the Court" by "manufactur[ing] [documents] for the purposes of litigation, in order to get standing." He also argued that MERS had no authority to assign the first mortgage and note to Wells Fargo and that the entity that issued the original loan, Fremont Investment & Loan, had gone into bankruptcy before the assignment.
Supreme Court denied both motions. The court found that defendant failed to establish that Wells Fargo engaged in fraud that would warrant vacatur under CPLR 5015(a)(3), and declined to strike the Stonehocker affidavit under CPLR 3024, since it was never filed and was not a pleading, and, in any event, was neither scandalous nor prejudicial.
First, with regard to vacatur, even accepting, as the dissent lays out, that defendant established an excusable default because his attorney, who had been served with the summary judgment motion, filed for bankruptcy and failed to respond, he did not demonstrate a meritorious defense.
Initially, defendant's vacatur motion was primarily predicated on his claim that Wells Fargo had engaged in fraud and misrepresented facts, a point that the dissent overlooks. In any event, defendant argues on appeal that Wells Fargo failed to prove that it gave 90 days' notice of foreclosure, as required by RPAPL 1304 and 1306.
Defendant's belated notice argument is improperly raised for the first time on appeal (see Lutin v SAP V/A Atlas 845 WEA Assoc. NF LLC, 157 AD3d 466, 467 [1st Dept 2018]). Moreover, the argument is unavailing. Indeed, Stonehocker averred that she had reviewed the RPAPL 1304 90-day pre-foreclosure notice sent to defendant by certified and first class mail and could confirm that the RPAPL 1306 notice was filed with the New York State Banking Department, as required, and that a confirmation number was issued.
Wells Fargo also argues that before the motion court, as further proof, it submitted the Weatherly affidavit, in which Weatherly averred that 90-day pre-foreclosure notice was sent to defendant at the subject property, and documentation of the mailing was filed with the New York State Banking Department. However, that assertion cannot be confirmed or rejected, because the Weatherly affidavit is omitted from the record, and cannot be accessed otherwise.
Further, there is no record evidence to support defendant's claim that Wells Fargo manufactured documents to "get standing." This is a bare accusation with no evidentiary proof. Nor is defendant aided by reference to an unrelated bankruptcy case in which he claims that Wells Fargo had relied upon a blank endorsement that the court found had been forged.
Turning to standing, it is not disputed that Wells Fargo had possession of the consolidated note and the consolidated mortgage at the time this action was commenced. A plaintiff in these cases establishes standing by showing that it is the holder or assignee of the subject note at the time the action is commenced (see Aurora Loan Servs., 25 NY3d at 361). As the dissent recognizes, in Aurora (25 NY3d at 361) the Court of Appeals made clear that "[i]t is the note, and not the mortgage, that is the dispositive instrument that conveys standing to foreclose." Accordingly, Wells Fargo established standing by showing that it held the consolidated note at the time it commenced this action, as Stonehocker, who had personal knowledge of the facts, averred (see OneWest Bank FSB v Carey, 104 AD3d 444, 445 [1st Dept 2013]).[FN1]
To the extent defendant could challenge standing based on any claims related to the consolidated note, his failure to include the complaint or the underlying summary judgment motion together with the supporting papers is fatal to this potential line of attack.
Moreover, defendant does not contest that Wells Fargo brought suit to enforce the consolidated note and mortgage, not the originals given by Fremont, and it is not contested that Wells Fargo was holder of the consolidated note and mortgage before commencing suit.
Critically, the CEMA makes clear that the consolidated note superseded the original notes and is the operative document in this case. As did the plaintiff in Weiss v Phillips (157 AD3d 1 [1st Dept 2017]), Wells Fargo seeks foreclosure based on the CEMA and consolidated note. As we held the plaintiff did in Weiss, Wells Fargo established its entitlement to relief by submitting the CEMA, consolidated note, unchallenged evidence that it is the holder of the consolidated note, and nonpayment of the loan by the borrowers. As we also held in Weiss, "In this case, because of the CEMA, standing is not an issue" and any absence of the underlying notes in this action is likewise accounted for by the CEMA (157 AD3d at 5-6). In other words, "there is no legitimate question that [Wells Fargo] is the party entitled to enforce under the [consolidated] note, as evinced by . . . the CEMA" (id. at 6).
Defendant failed to raise a triable issue of fact regarding standing, and we disagree with the dissent's limited reading of Weiss. While the facts of Weiss may be unique, the dissent provides no compelling reason that its holding should not be applied here. There is no legitimate question that Wells Fargo is the holder of the consolidated note and can enforce its rights under it.
The dissent seeks to entirely avoid our holding in Weiss, and instead prefers to create an additional and inappropriate burden for Wells Fargo, namely the production of the 2005 note and information about how it was endorsed, assigned or transferred. However, as we have held, the CEMA established that Wells Fargo was the holder of the consolidated note that superseded the 2005 note and that therefore made the 2005 note irrelevant to actions based on the consolidated note. Contrary to reason, the dissent would find that even in the face of the CEMA and the undisputed fact that Wells Fargo is the holder of the consolidated note, a borrower in default could somehow raise an issue of fact by attacking a note that is no longer in existence and that the parties agreed had been transferred to Wells Fargo for purposes of consolidation.
Significantly, the consolidated note and consolidated mortgage, which identified Wells Fargo as the new payee and mortgagee, were executed by defendant and Audrey as borrower. Mortgage payments were then made by the borrower to Wells Fargo without any objection from Fremont or MERS, a clear acknowledgment of the CEMA. This acknowledgment was subsequently memorialized by MERS's written assignment of the Fremont mortgage to Wells Fargo in October 2010.
Stated differently, defendant did not raise an issue of fact by making unsubstantiated allegations. To raise an issue of fact, he would have had to provide evidence that the 2005 note was not transferred to Wells Fargo. He failed to do so. Nor is there any basis in the record to question the legitimacy of the CEMA, the consolidated note, or Wells Fargo's right to foreclose. Defendant's unsubstantiated allegations appear to be nothing more than a tactic to delay foreclosure. It should be noted that defendant has defaulted in mortgage payments since May 2010 and continues to remain in possession and have full beneficial use of the property.
Notably, there is no evidence in the record or offered by defendant of any complaints by Fremont or MERS, its nominee, that its 2005 note was misappropriated or not actually [*4]transferred to Wells Fargo. To the contrary, the 2010 assignment of the Fremont mortgage validates the entire transaction and demonstrates that Fremont in fact had previously transferred the note to Wells Fargo and authorized its mortgage nominee - MERS - to assign the mortgage to Wells Fargo. Contrary to the dissent's claim, while the 2010 assignment of mortgage was not necessary to establish standing, the fact that it was transferred actually serves to validate the entire transaction and show that there were no concerns or issues with the consolidation.
Further, it is undisputed that Wells Fargo took physical possession of the consolidated note pursuant to the February 20, 2008 CEMA. Once Wells Fargo was the holder of the consolidated note, it became the assignee or transferee of the mortgage. As stated by the Court of Appeals in Aurora (25 NY3d at 361-362):
"Once a note is transferred, however, the mortgage passes as an incident to the note' (Bank of N.Y. v Silverberg, 86 AD3d 274, 280 [2d Dept 2011]).
" [A]ny disparity between the holder of the note and the mortgagee of record does not stand as a bar to a foreclosure action because the mortgage is not the dispositive document of title as to the mortgage loan; the holder of the note is deemed the owner of the underlying mortgage loan with standing to foreclose' (14A Carmody-Wait 2d § 92:79 [2012] [citation omitted])."
MERS subsequently assigned the Fremont mortgage to Wells Fargo on October 18, 2010. Defendant's bare assertion that MERS had no authority to assign the first mortgage and note to Wells Fargo is without merit. MERS was the designated mortgage nominee for Fremont and thus had authority to act on behalf of Fremont with respect to the subject mortgage.
Moreover, the dissent's fear that "a borrower and subsequent lender could agree to appropriate an original lender's investment merely by executing a CEMA" is not supported by the evidence in this case. However, the dissent's holding would mean that despite a party's being the undisputed holder of a note, and a CEMA evidencing that prior notes were superseded and no longer in effect, as well as an undisputed default by the borrower, the borrower could impede a clear right to foreclose by raising speculative questions without proof about inconsequential notes.
The dissent's reliance on US Bank N.A. v Richards (155 AD3d 522 [1st Dept 2017]), a case decided after Weiss, is misplaced. Richards involved a consolidated note, and we found that the plaintiff failed to show that it was assigned one of the original notes. However, Richards did not involve a CEMA that clearly set forth the plaintiff's entitlement to enforce the consolidated note, as is the case here. Rather, Richards involved the issue of the sufficiency of a lost note affidavit, an issue not raised in this case. Further, in Richards there was no proof that the original note was assigned to the plaintiff. In contrast, here there is clear record evidence of the assignment of the underlying notes and mortgages.
Defendant seeks to raise questions about the original loan from Fremont. In particular, he contends that Wells Fargo lacks standing to foreclose on the consolidated mortgage and loan because the original loan originator, Fremont Investment & Loan, filed for Chapter 11 bankruptcy on June 18, 2008, at which point Fremont's interest in the original loan became part of its bankruptcy estate. Defendant also focuses on the fact that MERS assigned the original mortgage to Wells Fargo on October 18, 2010, following execution of the consolidated loan papers on February 20, 2008. Defendant claims that it is undisputed that MERS's assignment was not approved by the bankruptcy court, and hence the assignment was invalid, depriving Wells Fargo of standing.
As to the original loan from Fremont, that note was consolidated with and superseded by the consolidated note under the CEMA in February 2008, which identified Wells Fargo as the payee and mortgagee and therefore is irrelevant to defendant's standing analysis. Thus, any [*5]issues concerning Fremont's bankruptcy reorganization in January 2009, which occurred after consolidation of the notes and mortgage, are of no moment. The 2005 Fremont note was superseded and no longer in existence at the time of the Fremont bankruptcy. As the dissent recognizes, Wells Fargo is not seeking to foreclose on the 2005 note and thus is not required to demonstrate anything with regard to that note.
Defendant's claims regarding the assignment of the mortgage in 2010 are also unavailing, as only the consolidated note, and not the mortgage, is relevant to the standing analysis (see Aurora, 25 NY3d at 361). Further, the assignment of the Fremont mortgage in 2010 was clearly a ministerial act and had no bearing on the earlier valid transfer of the note.
We also find that Supreme Court properly denied defendant's motion to strike the Stonehocker affidavit. Simply, the Stonehocker affidavit is not a pleading, and hence is not subject to being struck under CPLR 3024(b), and (as Supreme Court found) defendant failed to comply with 3024(c), which requires service of notice of a motion to strike within 20 days of service of a challenged pleading. In any event, the Stonehocker affidavit states only that defendant defaulted on his loan obligations and was sent 90-day pre-foreclosure notice, and is not scandalous or prejudicial, as defendant claimed.
Accordingly, the judgment of foreclosure, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered on or about May 18, 2017, bringing up for review an order, same court and Justice, entered on or about April 6, 2017, which denied defendant Lawson Ho-Shing's CPLR 5015(a)(3) motion to vacate an order (same court, Betty Owen Stinson, J.), entered January 28, 2016, which granted plaintiff Wells Fargo Bank's motion for summary judgment and/or default judgment on its complaint, and denied defendant's CPLR 3024(b) motion to strike an affidavit of merit, should be affirmed, without costs.
All concur except Gesmer and Moulton, JJ. who dissent in an Opinion by Moulton, J.




MOULTON, J. (dissenting)


I respectfully dissent.
In this action to foreclose a consolidated mortgage loan, the borrower, Lawson Ho-Shing (Ho-Shing), appeals pro se from Supreme Court's denial of two motions seeking to vacate Supreme Court's order entered January 28, 2016. The 2016 order granted plaintiff Wells Fargo Bank, N.A.'s unopposed motion for summary judgment and an order of reference. In my view, Supreme Court abused its discretion in denying Ho-Shing's motions, which established both an excusable default (the bankruptcy of his counsel) and a potentially meritorious standing defense [FN2].
On November 12, 2005, Ho-Shing and co-borrower Audrey Ho-Shing (the borrowers) obtained a mortgage loan from Fremont Investment & Loan (Fremont) in the principal amount of $432,000. The borrowers signed a promissory note for $432,000, dated November 12, 2005, secured by a mortgage on their Bronx property. On February 20, 2008, Wells Fargo loaned $43,338.22 to the borrowers. In exchange, the borrowers executed a promissory note for $43,338.22, secured by a mortgage on the property (the New Money Note). In order to create a single loan in the principal amount of $471,415, the borrowers executed a consolidated note, a consolidated mortgage and a Consolidation, Extension and Modification Agreement (the CEMA). The CEMA provides that the consolidated note superseded all terms, covenants, and provisions of the notes identified on Exhibit A. Exhibit A includes a brief description of the [*6]New Money Note and the 2005 note, but neither note is attached as an exhibit to the CEMA. The CEMA references the consolidated note as Exhibit C. Wells Fargo points to the consolidated note that is attached as an exhibit to the complaint in Bronx County Supreme Court On-Line Records Library (SCROLL). Wells Fargo does not similarly assert that the 2005 note can be found on SCROLL. Indeed, the 2005 note does not appear in SCROLL or the appellate record. As discussed infra, the 2005 note's absence fatally undermines Wells Fargo's argument.
On June 18, 2008, Fremont General Corporation (and its subsidiaries) filed for bankruptcy [FN3]. According to New York Secretary of State records, Fremont became Fremont Reorganizing Corporation on January 5, 2009, and thereafter became an inactive corporation. On October 18, 2010, Mortgage Electronic Registration Systems, Inc. (MERS), "as nominee for Fremont Investment & Loan," assigned the 2005 Fremont mortgage to Wells Fargo.
Wells Fargo commenced this action on June 20, 2013, to foreclose the consolidated loan in the principal amount of $471,415 based on the borrowers' May 1, 2010 default in payment. The borrowers, through their attorneys the Litvin Law Firm, P.C. (Litvin), answered the complaint in August 2013. The borrowers' answer included an affirmative defense of lack of standing.
In early October 2015, Wells Fargo moved for summary judgment and served its motion papers on Litvin. Supreme Court granted the motion without opposition, by order entered January 28, 2016. Wells Fargo also served Litvin with a notice of entry dated February 1, 2016. It is undisputed that Litvin was in bankruptcy at the time that Wells Fargo served it with the motion and the notice of entry.
In September 2016, Ho-Shing moved pro se to vacate Supreme Court's order by filing papers that he denominated as a CPLR 3024(b) motion to strike the affidavit of Wells Fargo's Vice President, Loan Documentation (the Stonehocker affidavit). In January 2017, Ho-Shing filed papers that he denominated as a motion to vacate Supreme Court's order pursuant to CPLR 5015(a)(3), based on Wells Fargo's "fraud, misrepresentation and misconduct." Supreme Court consolidated the motions for disposition.
In his motions, Ho-Shing asserted that Litvin failed to adequately represent him because the firm failed to respond to plaintiff's motion for summary judgment or to move to vacate the resulting order. As noted above, plaintiff's papers were served on Litvin after the firm filed for bankruptcy.
With respect to the merits, Ho-Shing pointed to irregularities that occurred in connection with the consolidated loan [FN4]. Ho-Shing cited to evidence of Fremont's parent company's June 18, 2008 bankruptcy. He also cited to New York Secretary of State records indicating that Fremont became Fremont Reorganizing Corporation on January 5, 2009, and thereafter became an inactive corporation. Ho-Shing argued that the assignment of a mortgage without the assignment of the underlying note would not convey any interest to Wells Fargo. He maintained that Wells Fargo had no legal authority to offer the loan modification "of a loan it did not own" because Wells Fargo had "no interest in the chain of title." Only the trustee in bankruptcy, Ho-Shing argued, could assign or deliver the 2005 note to Wells Fargo. In addition, despite Fremont's parent company's 2008 bankruptcy, Ho-Shing observed that over two years later, in 2010, [*7]Herman Kennerty, as Assistant Secretary of MERS, executed a written assignment of the Fremont mortgage to Wells Fargo [FN5]. Pointing to Kennerty's May 20, 2010 Washington State deposition, Ho-Shing questioned the validity of the assignment because Kennerty admitted that he was employed by Wells Fargo.
In opposition, Wells Fargo contended that it was entitled to summary judgment as the "original lender" of the consolidated loan, skirting the issues raised by Ho-Shing. Wells Fargo also maintained that the Stonehocker affidavit could not be struck under CPLR 3024(b) because it was never filed and was not scandalous or prejudicial [FN6]. In addition, Wells Fargo argued that Ho-Shing failed to demonstrate that it made false statements in connection with the loan or that there was a standing issue that warranted vacatur of Supreme Court's order under CPLR 5015(a)(3). Supreme Court denied Ho-Shing's motions, agreeing with Wells Fargo's view that his pro se motions required a circumscribed analysis under CPLR 3024(b) and CPLR 5015(a)(3). Supreme Court ignored the fact that Ho-Shing's motion papers established his excusable default and a meritorious standing defense sufficient for vacatur under CPLR 5015(a)(1). After mechanically analyzing Ho-Shing's arguments under CPLR 3024(b) and CPLR 5015(a)(3), Supreme Court concluded that Ho-Shing failed to establish that Wells Fargo committed "fraud, misrepresentation, or other misconduct of an adverse party" under CPLR 5015(a)(3). Supreme Court further found that Ho-Shing failed to establish that the Stonehocker affidavit was a scandalous or prejudicial pleading under CPLR 3024(b). Supreme Court additionally rejected Ho-Shing's standing argument on the basis that standing was not a "jurisdictional defect," citing two cases decided under CPLR 5015(a)(4).[FN7]
We should not disregard Ho-Shing's articulation of an excusable default (see e.g. Apple Bank for Sav. v Fort Tryon Apts. Corp., 44 AD3d 497 [1st Dept 2007]) and a meritorious defense (discussed infra) merely because he mislabeled his motions. It is evident from Ho-Shing's papers that he lacks legal training. Pro se defendants are entitled to "[s]ome leniency" (Du-Art Film Labs. v Wharton Intl. Films, 91 AD2d 572, 573 [1st Dept 1982]), and the papers that pro se litigants submit are given "liberal and broad interpretation" (Matter of Stephen W. v Christina X., 80 AD3d 1083, 1084 [3d Dept 2011], lv denied 16 NY3d 712 [2011]). While Ho-Shing did not [*8]specifically cite to CPLR 5015(a)(1), the fact remains that he has made the requisite showing thereunder.
In this appeal, Wells Fargo takes the position that it has unassailable standing as the "original lender" and the "holder" of the consolidated note as the term "holder" is defined in NY UCC 1-201(b)(21). However, it makes no effort to demonstrate that it received assignment or physical custody of the 2005 note from Fremont, the original lender. Nor does Wells Fargo explain how its employee, Kennerty, had the authority to execute the mortgage assignment at a time when Fremont no longer existed [FN8]. Instead, Wells Fargo argues that the mortgage assignment is "irrelevant" because the consolidated note is the operative instrument.
A plaintiff proves that it has standing to commence a mortgage foreclosure action by showing that it was the holder or assignee of both the mortgage and the note at the time the action was commenced (see OneWest Bank FSB v Carey, 104 AD3d 444 [1st Dept 2013]). It is the note, and not the mortgage, that is the dispositive instrument that conveys standing to foreclose (see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361 [2015]). The mortgage passes as an incident to the note; however, the transfer of the mortgage without the debt is a nullity, and no interest can be acquired by that transfer (see Merritt v Bartholick, 36 NY 44, 45 [1867]; Bank of N.Y. v Silverberg, 86 AD3d 274, 280 [2d Dept 2011]). The rule that mortgage obligations are owed to the persons entitled to enforce the note is "designed to protect the mortgagor against having to pay twice or defend against multiple claims on the note" (Weiss v Phillips, 157 AD3d 1,8 [1st Dept 2017]).
Wells Fargo fits within the definition of the "holder" of the consolidated note because it is "the person in possession of a negotiable instrument that is payable . . . to an identified person that is the person in possession" (NY UCC 1-201[b][21]). However, in the context of a consolidated mortgage loan, the issue of standing is not so simple.
As we have previously noted, "Standing usually becomes an issue when the plaintiff is not the original lender, but obtained its rights to the mortgage and note by, for example, an assignment" from the original lender (Weiss, 157 AD3d at 8 n 6). Here, Wells Fargo describes itself as the "original lender" of the consolidated loan [FN9]. However, it only advanced $43,338.22 to [*9]the borrowers; Fremont was the "original lender" that advanced $432,000 to the borrowers. The consolidated note is premised on Wells Fargo's receipt of the assignment or physical delivery of the 2005 note from the original lender. There is no proof of such assignment or delivery in the record. While the 2005 note was purportedly consolidated with, and superseded by, the consolidated note, we cannot dispense with the requisite proof (see e.g. Bank of N.Y. v Silverberg, 86 AD3d at 281 [complaint dismissed for lack of standing where "the consolidation agreement purported to merge the two prior notes and mortgages into one loan obligation" but the plaintiff proffered no evidence that MERS or the original lender assigned or physically transferred the notes described in the CEMA to the plaintiff]; Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 99 [2d Dept 2011] [complaint dismissed for lack of standing because the plaintiff failed to produce evidence that MERS possessed the authority to assign to plaintiff a first and second note and mortgage, or the CEMA and the consolidated note]).
It is improper to dispense with the requisite proof merely because Wells Fargo and Ho-Shing executed the CEMA. The majority asserts that there is record evidence of the assignment of the underlying notes and mortgages, which is presumably a reference to the CEMA. However, the CEMA is not evidence that the 2005 note was endorsed, assigned, or transferred from the original lender Fremont to Wells Fargo, because Fremont was not a party to the CEMA. The majority incorrectly argues that Fremont's parent company's bankruptcy is of no moment because the 2005 note was already superseded and no longer in existence at the time of the bankruptcy filing. But the bankruptcy would only be of no moment if Fremont had endorsed, assigned, or transferred the 2005 note to Wells Fargo in the first place, and an issue of fact exists as to whether this ever occurred.
I disagree with the majority's conclusion that Ho-Shing has not raised a potentially meritorious standing defense because he did not provide evidence that the 2005 note was either misappropriated or was not transferred to Wells Fargo - evidence to which Ho-Shing would be not be privy. Ho-Shing's burden was to demonstrate a potentially meritorious standing defense (see e.g. Romero v Alezeb Deli Grocery Inc., 115 AD3d 496, 496 [1st Dept 2014] [potentially meritorious defense raised even though there was "no conclusive evidence" regarding the defendant's notice defense]; Rosenblatt v New York City Tr. Auth., 122 AD3d 410, 411 [1st Dept 2014] [the plaintiff's testimony supported the possibility that the defendant "may" have a potentially meritorious defense based on a condition that "could have" caused or contributed to the accident]). He has made the requisite showing here.
To address the absence of evidence that Fremont transferred the 2005 note to Wells Fargo, the majority points to the lack of complaints by Fremont and MERS. However, the record is devoid of evidence that Fremont had notice of the consolidated loan. Nor can the 2010 mortgage assignment validate the entire transaction or demonstrate that Fremont had in fact transferred the 2005 note to Wells Fargo, as the majority asserts. In discounting Ho-Shing's arguments and characterizing the mortgage assignment as a ministerial act that had "no bearing on the earlier valid transfer of the note," the majority undermines its own position. If the 2010 mortgage assignment had no bearing on the transfer of the 2005 note, then the assignment cannot serve to validate the entire transaction.
Aurora Loan Servs., LLC. v Taylor (25 NY3d 355 [2015], supra) undermines, rather than supports, the majority's position. Unlike in this appeal, the plaintiff loan servicer in that case submitted an affidavit indicating that the affiant had "examined the original note herself," and the moving papers "clearly show the note's chain of ownership through Deutsche" (id. at 362). The Court of Appeals pointed three times to the fact that the loan servicer demonstrated that no gap existed in the note's chain of ownership as evidenced by an allonge that was affixed to the note (id. at 359-360). By contrast, here there is an unexplained gap in the chain of ownership caused by the absence of evidence that Fremont assigned the 2005 note to Wells Fargo (compare Wells [*10]Fargo Bank, N.A. v Ali, 122 AD3d 726, 727 [2d Dept 2014] [summary judgment should have been granted to the plaintiff because "the documentary evidence established that there was no gap in the chain of ownership of one of the notes and mortgages, which was the subject of a consolidation, extension, and modification agreement"]).
Moreover, Aurora Loan Servs. did not involve a consolidated loan. While the Court of Appeals concluded that standing was demonstrated by proof of possession of the note, Aurora involved a single loan and a single note for $600,000, which was later made part of a residential mortgage-backed securitization trust (id. at 358-359). This appeal involves three separate notes (the 2005 note, the New Money Note and the consolidated note) and Wells Fargo's chain of ownership is in question.[FN10]
If, for example, Wells Fargo had not bundled the consolidated loan but had sought to foreclose on the 2005 note, it would be required to demonstrate that it had physical possession of the 2005 note or that the 2005 note had been assigned to it (see e.g. One Westbank FSB v Rodriguez, 161 AD3d 715 [1st Dept 2018] [Supreme Court properly denied summary judgment because a standing issue existed regarding the assignment of the note through a blank indorsement written on separate paper that did not reference the note]). There is no justification for dispensing with such proof merely because the 2005 note was purportedly consolidated with, and superseded by, the consolidated note. As noted by Ho-Shing in his motions, if the 2005 note was assigned or transferred to an entity other than Wells Fargo, the 2010 assignment of the Fremont mortgage would not have transferred any interest to Wells Fargo (see Merritt, 36 NY at 45; Bank of N.Y. v Silverberg, 86 AD3d at 280).[FN11]
Reversal of Supreme Court's order is compelled by our decision in US Bank N.A. v Richards (155 AD3d 522 [1st Dept 2017]). In that case, we reversed Supreme Court's denial of a borrower's motion to vacate his default under CPLR 5015(a)(1) (id.). We found that the borrower demonstrated an excusable default and a meritorious standing defense in light of the gaps in the plaintiff's proof (id. at 524). We noted that although the plaintiff sought to foreclose on a loan modification agreement in the amount of $327,828.34, it failed to demonstrate that it was assigned the first note of $289,000, which was made in favor of the first lender (id. at 523-524).
In US Bank N.A. v Richards, we also held that the borrower demonstrated a standing defense because there was a question regarding the sufficiency of the lost note affidavit required under UCC 3-804 (155 AD3d at 524). NY UCC 3-804 provides a method of recovery for a plaintiff who claims to be the owner of an instrument but does not have possession of the lost paper and therefore "does not have the holder's prima facie right to recover" (NY UCC 3-804, Official Comment). In this appeal, unlike the plaintiff in US Bank, N.A. v Richards, Wells Fargo [*11]does not argue that it lost the note that was consolidated with, and superseded by, the consolidated note. Yet it has not produced a copy of the 2005 note [FN12]. Wells Fargo ignores any issue regarding the assignment or delivery of the 2005 note by incorrectly positing that the inquiry begins and ends with its status as the undisputed holder of the consolidated note.
I also disagree with the majority's position that Weiss (157 AD3d 1) supports dispensing with the requisite proof that Fremont transferred the 2005 note to Wells Fargo. Weiss involved a loan made to borrowers who gave the lender a mortgage on property that they had acquired by fraudulent means (id. at 3). After reacquiring the property, the rightful owner entered into a CEMA with the lender that extended the due date of the note, capped interest, and scheduled interest payments, giving the owner time to obtain financing to avoid foreclosure (id. at 3, 6). This Court found it significant that the owner signed the CEMA while represented by counsel - a factor not present here (id. at 13). Notably, "we [did] not view [the] action as a typical mortgage foreclosure action" (id. at 7). Our holding was limited to the "unique facts of this case" (id. at 6)[FN13]. We dispensed with the requirement that the lender produce the note that was executed by the borrowers who had acquired the property through fraudulent means (id. at 7). We did so because there was "no legitimate question that [the lender was] the party entitled to enforce under the note" (id. at 8-9). The uncontested evidence included "unchallenged deposition testimony of the existence of the note" (id. at 7). Here, there is more than a legitimate question regarding Fremont's assignment or delivery of the 2005 note to Wells Fargo [FN14]. Unlike the lender in Weiss, who was the original lender of the undisputed note in question, Wells Fargo was not the original lender of the 2005 note. The CEMA cannot fill the void. To hold otherwise would mean that a borrower and subsequent lender could agree to appropriate an original lender's investment merely by executing a CEMA to which the original lender is not a party.
Therefore, in my view, Ho-Shing demonstrated an excusable default and a meritorious standing defense. I would reverse Supreme Court's decision granting plaintiff summary judgment and remand this matter to Supreme Court for further proceedings.
Judgment of foreclosure, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered on or about May 18, 2017, affirmed, without costs.
Opinion by Tom, J. All concur except Gesmer and Moulton, JJ. who dissent in an Opinion by Moulton, J.
Richter, J.P., Tom, Mazzarelli, Gesmer, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 8, 2019
CLERK



Footnotes

Footnote 1:The dissent's efforts to distinguish Aurora are misplaced. There is no "unexplained gap" in the note's chain of ownership in this case. The 2005 note was consolidated and superseded by the consolidated note, and this is all fully explained by the CEMA. Nor is it consequential that Aurora did not involve a consolidated loan.

Footnote 2:I agree with the majority that Ho-Shing's notice arguments under Real Property Actions and Proceedings Law §§ 1304 and 1306 are not preserved.

Footnote 3:Wells Fargo does not dispute that Fremont was part of the bankruptcy.

Footnote 4:Ho-Shing appears to have cited to CPLR 5015(a)(3) because he believed that Wells Fargo fabricated documents in order to manufacture standing.

Footnote 5:Ho-Shing asserted that Fremont's parent company's assets were sold sometime in 2010 to Signature Group Holdings, Inc.

Footnote 6:On appeal, Wells Fargo explains that the Stonehocker affidavit was served but never filed with Supreme Court, as the result of an internal litigation hold.

Footnote 7: On appeal, Wells Fargo explains that Supreme Court appeared to have been confused when it rejected Ho-Shing's standing argument on the basis that it was not a jurisdictional defect. Supreme Court cited two cases holding that standing can be waived if the defense is not asserted in an answer or pre-answer motion (see e.g. Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 244 [2d Dept 2007] [standing is "not a jurisdictional defect that was so fundamental to the power of adjudication of a court, that it could not be waived"] [internal quotation marks and citation omitted]). Waiver is not an issue in this action because the borrowers asserted a standing defense in their answer. 

Footnote 8:The 2008 CEMA contains inconsistent language regarding when the 2005 Fremont mortgage was assigned to Wells Fargo. The preprinted language at the bottom of Exhibit A (entitled "List of Mortgages, Notes and Agreements") reads, "This mortgage was assigned to [plaintiff]" (emphasis added). By contrast, the preprinted language continues, "by Assignment of Mortgage dated," and immediately thereafter the language, "to be recorded," is inserted (emphasis added). Wells Fargo does not maintain that the mortgage assignment signed by MERS on October 18, 2010 was actually made two years earlier in connection with the consolidated loan. 

Footnote 9:Wells Fargo cites Emigrant Mtge. Co., Inc. v Persad (117 AD3d 676 [2d Dept 2014]) to bolster its argument that it is the "original lender." However, Emigrant Mtge. Co., Inc. did not involve a consolidated loan. Rather, the original lender assigned a note and a mortgage in connection with a single loan transaction to another entity two months after the original lender commenced a foreclosure action.

Footnote 10:Similarly, OneWest Bank FSB (104 AD3d 444), cited by the majority and Wells Fargo, does not support the proposition for which it is cited. Like Aurora Loan Servs., OneWest Bank FSB did not involve a consolidated loan, and, therefore, it did not address the issue before us.

Footnote 11:While it is the note, and not the mortgage, that is the operative document, the execution of a mortgage assignment at a time when Fremont no longer existed also raises concerns regarding the legitimacy of the consolidated loan transaction. 

Footnote 12:To the extent Wells Fargo lost the 2005 note, it cannot circumvent the requirements of NY UCC 3-804 by relying on its status as the undisputed holder of the consolidated note. This status does not negate the possibility that Ho-Shing could be subject to double liability if the 2005 note later appeared in the possession of some entity other than Wells Fargo.

Footnote 13:Indeed we stressed that our holding was cabined by virtue of the action's unique facts by noting that point six times in our decision (id. at 3, 5 n 4, 6, 7, 10 and 13).

Footnote 14:Notably, in Weiss, the rightful owner bore no personal liability for the loan obtained through the borrowers' fraud, and, therefore, no risk existed that the owner would be subject to double liability (id. at 9). Ho-Shing, however, as an obligor of the 2005 note, could be subject to double liability if the 2005 note was transferred or delivered to an entity other than Wells Fargo.