Wilmington Sav. Fund Socy., FSB v Matamoro (2021 NY Slip Op 05741)





Wilmington Sav. Fund Socy., FSB v Matamoro


2021 NY Slip Op 05741


Decided on October 20, 2021


Appellate Division, Second Department


Dillon, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 20, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2019-00715
2019-10294
 (Index No. 10521/14)

[*1]Wilmington Savings Fund Society, FSB, etc., respondent,
v
Joanne Matamoro, et al., appellants, et al., defendants.



APPEAL by the defendants Joanne Matamoro and Andreas Jennings, in an action to foreclose a mortgage, from (1) an order of the Supreme Court (David B. Vaughn, J.), dated March 4, 2016, and entered in Kings County, and (2) an order of the same court dated October 31, 2018. The order dated March 4, 2016, denied those defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against them. The order dated October 31, 2018, denied those defendants' motion pursuant to CPLR 2221 for leave to reargue and renew their prior motion.



The Virgo Law Firm, Brooklyn, NY (Samantha Virgo of counsel), for appellants.
Friedman Vartolo, LLP, New York, NY (Zachary Gold of counsel), for respondent.



DILLON, J.


OPINION & ORDER
This appeal implicates the extent to which there is interplay between a CPLR 3211(a) motion to dismiss in the context of a residential mortgage foreclosure action, the attorney certification requirements of CPLR 3012-b, and the moving party's burden of proof. For reasons analyzed below, we hold that a defendant moving to dismiss a complaint on the ground of the plaintiff's lack of standing does not meet the affirmative burden of proof by merely relying upon any defects that might exist with the certificate of merit submitted by the plaintiff's attorney under CPLR 3012-b, or otherwise, if the certificate of merit fails to address all potential aspects of standing.
I. Relevant Facts
On July 18, 2014, the plaintiff commenced this action against the defendants Joanne Matamoro and Andreas Jennings (hereinafter together the defendants), among others, to foreclose a mortgage. The complaint alleged that on March 26, 2007, the defendants executed a note in favor of nonparty Fieldstone Mortgage Company, Inc. (hereinafter Fieldstone), which was secured by a mortgage in favor of nonparty Mortgage Electronic Registration Systems, Inc. (hereinafter MERS), as nominee for Fieldstone. The complaint further alleged that the defendants failed to make the payments due on the note on April 1, 2012, and thereafter. The complaint alleged that on March 20, 2013, MERS assigned the mortgage and the "indebtedness evidenced by the [n]ote" to nonparty J.P. Morgan Mortgage Acquisition Corp. (hereinafter J.P. Morgan), and that on September 27, 2013, J.P. Morgan assigned the mortgage and the "indebtedness evidenced by the [n]ote" to the plaintiff.
The summons and complaint was accompanied by a certificate of merit pursuant to CPLR 3012-b, which was executed by the plaintiff's counsel on July 15, 2014. Various exhibits were annexed to the certificate of merit, including a purported copy of the note and mortgage dated March 26, 2007, an assignment of the note and mortgage to J.P. Morgan dated March 20, 2013, an assignment of the note and mortgage from J.P. Morgan to the plaintiff dated September 27, 2013, [*2]and evidence of various related document recordings.
The defendants did not immediately answer the complaint. Instead, they moved pursuant to CPLR 3211(a)(1), (3), and (7) to dismiss the complaint on various grounds, including that the plaintiff lacked standing. The defendants argued, inter alia, that the plaintiff lacked standing at the time of commencement of the action, as the copy of the note annexed to the certificate of merit did not contain any indorsement or allonge conferring any rights upon the plaintiff. They argued that the chain of assignments was defective because MERS did not have the authority to assign the note. Further, the defendants contended that the certificate of merit contained certain language defects, and that the plaintiff's counsel had failed to ensure that there was a reasonable basis to commence the action, providing an independent basis for the dismissal of the complaint under CPLR 3012-b(e).
In opposition, the plaintiff submitted an affidavit of a representative of its loan servicer, Roundpoint Mortgage Servicing Corporation (hereinafter Roundpoint). The representative established her familiarity with Roundpoint's record-keeping practices, and averred that the note and mortgage had been transferred by assignment to the plaintiff prior to the commencement of the action. A copy of the assignment she relied upon was attached to her affidavit. It was the same assignment from J.P. Morgan to the plaintiff dated September 27, 2013, that had earlier been attached to the certificate of merit. In an affirmation, the plaintiff's counsel also opposed the dismissal motion by arguing that the defendants failed to demonstrate that J.P. Morgan did not have physical possession of the note at the time of its assignment to the plaintiff, and that the dismissal motion was otherwise premature.
In an order dated March 4, 2016, the Supreme Court denied the defendants' motion to dismiss the complaint, determining that the plaintiff had standing by virtue of physically possessing the note which had previously been held by J.P. Morgan. The court made this determination despite the fact that the plaintiff had argued in opposing the defendants' motion to dismiss that it had standing based upon an assignment of the underlying note from J.P. Morgan. The plaintiff had only raised the issue of physical possession of the note as a failure of the defendants' burden of proof.
After their motion was denied, the defendants served a verified answer dated April 22, 2016, containing 19 affirmative defenses and a counterclaim. The affirmative defenses included the plaintiff's lack of standing.
On August 7, 2017, the plaintiff moved for summary judgment on the complaint and an order of reference. In support of the motion, the plaintiff produced, for the first time, a copy of the note with an indorsement in blank executed by a representative of Fieldstone. The defendants cross-moved for summary judgment dismissing the complaint insofar as asserted against them. In an order dated March 20, 2018, the Supreme Court denied both the motion and the cross motion, which order is not on appeal here.
On May 9, 2018, the defendants moved for leave to reargue and renew their prior motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against them. They contended, inter alia, that the Supreme Court had misapprehended a fact when it concluded that the plaintiff had physical possession of the note at the time the action was commenced. The defendants' attorney noted in her supporting affirmation that the plaintiff had annexed to the papers in support of their motion for summary judgment a copy of the note that was indorsed in blank by a representative of Fieldstone. She stated that the copy of the note submitted with the motion for summary judgment "was not in likeness of" the copy of the note that accompanied the certificate of merit. In particular, she noted that the copy of the note that accompanied the certificate of merit did not have any indorsement. Parenthetically, this Court has compared the two notes dated March 26, 2007, and but for the indorsement in blank on the latter, finds their form and content to be identical. The defendants maintained that the absence of the indorsement in blank on the version of the note that accompanied the certificate of merit necessitated the dismissal of the action. In opposition, the plaintiff contended, among other things, that the defendants failed to meet their burden of proving the absence of standing in their earlier motion to dismiss, and that in any event, standing had been earlier established through the affidavit of Roundpoint's representative that the note had been assigned to the plaintiff by J.P. Morgan prior to the commencement of the action.
In an order dated October 31, 2018, the Supreme Court denied the motion on the ground that standing had already been addressed by the court's determination of the prior motion and cross motion for summary judgment. Presumably, the court meant that having previously found there to be questions of fact as to standing in denying the parties' motion and cross motion for [*3]summary judgment, no basis existed to grant a CPLR 3211(a) dismissal of the complaint upon reargument.
The defendants appeal from both the order dated March 4, 2016, denying their motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against them, and the order dated October 31, 2018, denying their motion for leave to reargue and renew. We affirm, though for reasons different than those relied upon by the Supreme Court.
II. CPLR 3012-b Does Not Alone Entitle the Defendants to a Dismissal of the Complaint
The enactment of CPLR 3012-b has a somewhat unique history, and appellate courts have had only limited occasions to address its meaning and mechanics.
The bursting of the housing bubble in 2008 caused a significant influx of residential mortgage foreclosure actions in New York courts in the years that followed. Some of those actions reflected "robo-signing" abuses, where foreclosure attorneys filed and served initiatory papers without undertaking the requisite due diligence for determining that the commenced cases had merit (Correspondence of Helene E. Weinstein dated July 19, 2013, Bill Jacket for CPLR 3012-b, L 2013, ch 306, sec 1). Robo-signing resulted in the commencement of actions where the standing of the plaintiffs was not pre-established, if it could be established at all, and caused the creation of "shadow dockets" where many thousands of residential mortgage cases were in a litigation limbo, to the detriment of homeowners (Supporting Correspondences, Bill Jacket, L 2013, ch 306, sec 1).
The first effort undertaken by the Courts of the State of New York to deal with the problems attributed to robo-signing was the promulgation of Administrative Orders 548-10 and 431-11 (hereinafter together the Administrative Orders) (see 22 NYCRR 202.12-a[f]). By those Administrative Orders, foreclosure counsel were required to file an affirmation with the court that counsel had consulted with identified representatives of the plaintiff, personally reviewed documents and records for factual accuracy, and confirmed the factual accuracy of allegations contained in the complaints and any supporting affidavits, affirmations, or notarizations filed with the court, and that based upon all of the foregoing and reasonable inquiry, to affirm to the best of counsel's information, knowledge, and belief that the summons, complaint, and other filed papers contain no misstatement of fact or law. The Administrative Orders expressly tied the obligation of foreclosure counsel to the ethical obligations contained in 22 NYCRR Part 1200 and to Section 130 of the Rules of the Chief Administrative Judge.
This was not the end of the story, however, as the Administrative Orders were not without their own legal controversies. After their promulgation, courts addressed issues regarding the timing of the attorney affirmations (see e.g. LaSalle Bank, NA v Pace, 100 AD3d 970, 970-971), the effect of and remedies for noncompliance with the Administrative Orders (see e.g. Citibank, N.A. v Sang Chol Lee, 42 Misc 3d 1210[A], *3 [Sup Ct, Kings County]), and the broader question of whether the Administrative Orders constituted an improper ultra vires regulation of the jurisdiction, practices, and procedures of the trial judges (see e.g. Bank of New York Mellon v Izmirligil, 43 Misc 3d 409, 417 [Sup Ct, Suffolk County], revd 144 AD3d 1063).
Given that some trial-level decisional authority, including Bank of New York Mellon v Izmirligil (see id.), had questioned the authority of the Chief Administrative Judge to issue the Administrative Orders, the state legislature enacted CPLR 3012-b to quiet the issue. That statute, which became effective on August 30, 2013, while not precisely mirroring either Administrative Order, was enacted to accomplish the same overarching purpose—to require foreclosure counsel to undertake a consultation with the plaintiff and a review of pertinent documents, and to certify to the best of counsel's knowledge, information, and belief that there is a reasonable basis for the commencement of the action, including that the plaintiff is entitled to enforce its rights under the relevant documents.
Administrative Order 431-11, which superseded Administrative Order 548-10, was itself promptly vacated from the Uniform Rules, confirming that CPLR 3012-b was its true statutory replacement. Tellingly, Administrative Order 208-13, which became effective immediately upon its promulgation, directed that Administrative Order 431-11 "shall not apply to residential mortgage foreclosure actions commenced on or after August 30, 2013," which was the same date that CPLR 3012-b became effective.
CPLR 3012-b, while having the full force and effect of a legislative enactment, is weaker in one respect than its Administrative Order predecessors. The Administrative Orders [*4]required that foreclosure counsel file an affirmation, which connotes the authority of an oath and is subject to the penalties of perjury (see CPLR 2106[a]; MZ Dental, P.C. v Progressive Northeastern Ins. Co., 6 Misc 3d 649, 653 [Suffolk Dist Ct]). By contrast, CPLR 3012-b requires by its nomenclature the filing of a mere "certificate" from counsel, which falls short of the oath requirements of an affirmation.
CPLR 3012-a requires that in actions involving medical, dental, or podiatric malpractice, plaintiff's counsel must likewise file with the complaint a "certificate" attesting that counsel has reviewed the facts of the case, consulted with at least one physician, dentist, or podiatrist licensed in the state who is reasonably believed to be knowledgeable about the relevant issues, and that the attorney has concluded on the basis of the review and consultation that there is a reasonable basis for the commencement of the action. The purpose of CPLR 3012-a, as stated upon its enactment in 1986, is to deter the commencement of frivolous actions by counsel on behalf of their clients, and to thereby reduce the cost of medical malpractice litigation and insurance premiums (see Mem. of State Exec. Dept., 1985 McKinney's Session Laws of N.Y. at 3022-3027; Tewari v Tsoutsouras, 75 NY2d 1, 6; Rabinovich v Maimonides Med. Ctr., 179 AD3d 88, 91; Sisario v Amsterdam Mem. Hosp., 159 AD2d 843, 844; Mercado v Schwartz, 63 Misc 3d 362, 378 [Sup Ct, Suffolk County]; Djeddah v Williams, 24 Misc 3d 1234[A], *2 [Sup Ct, New York County]; Harmon v Huntington Hosp., 163 Misc 2d 150, 151 [Sup Ct, New York County]).
CPLR 3012-a and 3012-b are alike in that they place an initial responsibility upon attorneys for plaintiffs to undertake efforts assuring the factual and legal validity of the actions, prior to the filing of initiatory papers with the court. The law has the right to impose such expectations upon attorneys as they occupy a unique status as officers of the court (see Judiciary Law § 90; Matter of Zuckerman, 20 NY2d 430, 439; MZ Dental, P.C. v Progressive Northeastern Ins. Co., 6 Misc 3d at 653 [Suffolk Dist Ct]; Bennett v Martoche, 123 Misc 2d 874, 876 [Sup Ct, Erie County]). However, the obligation imposed by both CPLR 3012-a and 3012-b is not an evidentiary one as to the ultimate merits of an action (see Horn v Boyle, 260 AD2d 76, 77 [medical malpractice action under CPLR 3012-a]; George v Sastic, 166 AD2d 838, 839 [same]), but is instead, by their histories, an ethical one. The ethical, rather than evidentiary, purpose of CPLR 3012-a and 3012-b is underscored by the additional fact that the legislature located the statutes within CPLR article 30, rather than placing them among the disclosure provisions of CPLR article 31.
Notably, for CPLR 3012-b, nothing in the statutory language incorporates counsel's certificate or any of its exhibits into the complaint itself, nor is the certificate made an attachment to the complaint (see CPLR 3013, 3014, 3015, 3016). Rather, the statute requires that "the complaint shall be accompanied by [the] certificate" (see CPLR 3012-b[a] [emphasis added]), meaning that counsel's certificate has an existence separate from the complaint itself. While CPLR 3014 provides in its final sentence that a copy of any writing which is attached to a pleading is a part thereof for all purposes (see Matter of Lynch v Duffy, 172 AD3d 1370, 1373; D'Amico v Correctional Med. Care, Inc., 120 AD3d 956, 963), a certificate of merit is not part of the complaint because it is not "attached" to it as described by CPLR 3014. The certificate merely "accompanies" the complaint (see CPLR 3012-b[a]) to serve the discrete ministerial and ethical purpose of its own statute.
That said, in a mortgage foreclosure action, a motion to dismiss pursuant to CPLR 3211(a) on the ground of the plaintiff's lack of standing is not necessarily determined based on the adequacy or inadequacy of the certificate of merit filed by the plaintiff's counsel pursuant to CPLR 3012-b. CPLR 3211(a) should not be conflated with CPLR 3012-b as both statutes exist for two important, though distinctly separate, purposes. The documents comprising each are separate. The complaint serves the legal purpose of giving notice to defendants of the transactions, occurrences, or series of transactions or occurrences intended to be proved, and the material elements of each cause of action (see CPLR 3013; 12 Baker Hill Rd., Inc. v Miranti, 130 AD3d 1425, 1426; Bell v Toyota, 64 AD2d 585). The certificate of merit serves the ministerial and ethical purpose of requiring counsel to take good faith steps to assure that the action has merit, and to certify to the best of counsel's knowledge, information, and belief that a reasonable basis exists for commencing the action and that the plaintiff has standing to recover on the note underlying the action.
Counsel's reasonable beliefs contained in a certificate of merit are irrelevant to whether defendants, in moving to dismiss a complaint under CPLR 3211(a), establish their own defined burden of proof for the dispositive relief of dismissal. Indeed, the certificate of merit does not itself demonstrate the ultimate meritoriousness of a claim, but merely assures that counsel is [*5]satisfied that there is a reasonable basis for the commencement of the action (see Horn v Boyle, 260 AD2d at 77 [medical malpractice certificate of merit under CPLR 3012-a]; George v Sastic, 166 AD2d at 839 [same]). The greatest overlap between complaints and certificates of merit may be their mere concurrent and coincidental timing at the commencement of residential mortgage foreclosure litigations.
Here, no substantive documents were attached to the complaint or made a part thereof. The unindorsed copy of the note and mortgage, and the purported assignments of the note and mortgage, were attached only as exhibits to the separately-bluebacked certificate of merit, and therefore were not part of the complaint itself. Therefore, when the defendants moved to dismiss the complaint pursuant to CPLR 3211(a)(1), (3), and (7), and argued that perceived deficiencies with the certificate of merit necessitated the dismissal of the complaint, they cross-pollinated CPLR 3211(a) with CPLR 3012-b in assuming that the certificate of merit must conclusively address all evidentiary aspects of a potential CPLR 3211(a) motion for the complaint to survive a challenge. This, parties should not do.
The foregoing is not meant to suggest that documents annexed to certificates of merit cannot be used in support of CPLR 3211(a) dismissal motions. They can. After all, relevant documents are relevant documents. But a deficiency in a certificate of merit will not, in and of itself, provide a basis for the dismissal of a complaint if the defendant, as the moving party, fails to affirmatively address in its motion papers all relevant legal issues required for a CPLR 3211 dismissal, including any that go beyond the contents of the certificate of merit itself.
III. The Defendants' CPLR 3211(a) Motion to Dismiss was Properly Denied
Turning our attention to the specifics of the defendants' motion to dismiss, there is no requirement that a plaintiff allege standing in the complaint. Standing is instead in the nature of an affirmative defense to be pleaded and proved (see CPLR 3211[a][3]; 3018[b]; US Bank N.A. v Nelson, 169 AD3d 110, 115, affd 36 NY3d 998; Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 241-245). The plaintiff in this instance gratuitously alleged in its complaint the existence of various assignments that tracked the note from Fieldstone to J.P. Morgan to the plaintiff. Doing so did not eliminate the defendants' burden of proving their entitlement to dismissal of the complaint pursuant to CPLR 3211(a).
The defendants' dismissal motion addressed three separate subdivisions of CPLR 3211, those being (a)(1) (documentary evidence), (a)(3) (standing), and (a)(7) (failure to state a cause of action). Each subdivision is briefly described here seriatim.
As has been often-reported, a motion to dismiss a complaint pursuant to CPLR 3211(a)(1) on the ground of documentary evidence may only be granted where the proffered documents utterly refute the plaintiff's allegations, conclusively establishing a defense as a matter of law (see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326; Hall v Hobbick, 192 AD3d 776; Oberlander v Moore, 191 AD3d 1009; Financial Assistance, Inc. v Graham, 191 AD3d 952; Hutton Group, Inc. v Cameo Owners Corp., 160 AD3d 676; Hershco v Gordon & Gordon, 155 AD3d 1007, 1008).
While CPLR 3211(a)(3) speaks to the plaintiff's lack of "capacity" as a basis for dismissing complaints, decisional authorities have addressed a party's lack of standing as within the scope of the same statutory subdivision (see e.g. Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d at 242). Where a CPLR 3211(a)(3) motion is based upon an alleged lack of standing, the burden is on the moving defendant to establish, prima facie, the plaintiff's lack of standing as a matter of law (see Katz v Hampton Hills Assoc. Gen. Partnership, 186 AD3d 688; New York Community Bank v McClendon, 138 AD3d 805, 806; Arch Bay Holdings, LLC-Series 2010B v Smith, 136 AD3d 719). The presentation of prima facie evidence is a concept more frequently associated with motions for summary judgment under CPLR 3212, but is also applied to CPLR 3211(a) motions where the basis for dismissal is standing (id.). The burden is not on the plaintiff to affirmatively establish its standing for the dismissal motion to be denied (see Deutsche Bank Natl. Trust Co. v Benson, 179 AD3d 767, 768; Deutsche Bank Trust Co. Ams. v Vitellas, 131 AD3d 52, 59-60; U.S. Bank N.A. v Guy, 125 AD3d 845, 847; J.P. Morgan Chase Bank, N.A. v Coleman, 119 AD3d 841, 842; HSBC Mtge. Corp. [USA] v MacPherson, 89 AD3d 1061, 1062). To defeat a defendant's motion to dismiss, the plaintiff has no burden of establishing its standing as a matter of law, but must merely raise a question of fact as to the issue (see U.S. Bank N.A. v Trulli, 179 AD3d 740, 742; U.S. Bank N.A. v Guy, 125 AD3d at 847; Deutsche Bank Natl. Trust Co. v Haller, 100 [*6]AD3d at 683).
Contrastingly, "[o]n a motion to dismiss pursuant to CPLR 3211(a)(7), the court must 'accept the facts as alleged in the complaint as true, accord [the plaintiff] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Phoenix Life Ins. Co. v Town of Oyster Bay, 186 AD3d 763, 765, quoting Leon v Martinez, 84 NY2d 83, 87-88). Where evidentiary material is submitted and considered on a motion pursuant to CPLR 3211(a)(7), and the motion is not converted into one for summary judgment, "the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact claimed by the plaintiff to be one is not a fact at all, and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (68 16th Realty, LLC v Bank of N.Y., 190 AD3d 796, 796; see Guggenheimer v Ginzburg, 43 NY2d 268, 275).
Standing in residential mortgage foreclosure actions may be established any of three ways. One is where the plaintiff is the original lender in direct privity with the defendant. The direct privity between lenders and debtors is rarely seen in residential mortgage foreclosure litigations, given the nature of the home lending business where financial instruments are routinely sold, assigned, or "bundled" from one institution to another between the time funds are initially dispersed by a lender and the commencement of a later foreclosure action. The second basis for standing is where the plaintiff is a holder in physical possession of the note prior to the commencement of the action, with an allonge or indorsement in blank (see UCC 1-201[b][21][A], 3-204[2]; Ocwen Loan Servicing, LLC v Schacker, 185 AD3d 1041, 1043; Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d 1020, 1022; Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d 683, 684). The third is when the note underlying an action was assigned to the plaintiff prior to the date of commencement of the action (see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361-362; US Bank Trust, N.A. v Loring, 193 AD3d 1101; Nationstar Mtge., LLC v Tabick, 193 AD3d 950). Thus, the defendants here, in moving to dismiss the complaint under CPLR 3211(a)(1) and (3), needed to affirmatively prove that the plaintiff was not in direct privity with them, was not in physical possession of the note indorsed to it or in blank at the time of the commencement of the action, and that the assignment of the note from J.P. Morgan to the plaintiff was invalid.
The defendants failed to meet their affirmative burden of establishing the plaintiff's lack of standing on the basis of documentary evidence, and were not entitled to dismissal of the complaint under either CPLR 3211(a)(1) or (3). The documentary evidence dispatches any issue regarding direct privity. As for the other potential bases for arguing a lack of standing, the defendants relied exclusively upon the CPLR 3012-b certificate of merit. Taking the documents annexed to the certificate of merit at face value, the defendants failed to show, for CPLR 3211(a)(1) and (3) purposes, that they utterly refuted the plaintiff's standing. The documents attached to the certificate of merit were proffered by the defendants exclusively for the purpose of arguing that there was a defect in the chain of assignments—that MERS, as a "nominee" of Fieldstone with authority to transfer only the mortgage, did not have the authority to assign the note to J.P. Morgan, rendering the later assignment from J.P. Morgan to the plaintiff invalid (see Bank of N.Y. v Silverberg, 86 AD3d 274, 281). Even if true, the defendants did not attempt to address, and certainly did not prove, as argued by the plaintiff in its opposition to dismissal, that J.P. Morgan was not in physical possession of the note when it transferred its rights in the note to the plaintiff, as to render that assignment valid. Such are the pitfalls of moving to dismiss a complaint in lieu of an answer without the benefit of discovery that might support a later and stronger motion for summary judgment.
The defendants, as moving parties, bore the burden of presenting documentary evidence to "utterly refute" the plaintiff's standing, which they could not do upon failing to address and prove that J.P. Morgan did not have physical possession of the note at the time of its assignment to the plaintiff. The defendants improperly sought to shift their burden of proof to the plaintiff by relying only upon the documentation annexed to the certificate of merit, which included the assignment from MERS to J.P. Morgan, without the defendants addressing whether any physical possession of the note by J.P. Morgan purified its right to validly reassign the same note to the plaintiff. The defendants could not rely upon the certificate of merit to carry their own burden of proof, if the certificate did not address whether J.P. Morgan had physical possession of the note at the operative time. Plaintiffs' counsels, in creating certificates of merit, are not required to anticipatorily address all issues of proof relevant to a defendant potentially interested in seeking dismissal under CPLR 3211(a) or summary judgment under CPLR 3212(b). In other words, even [*7]if, arguendo, a certificate of merit is lacking in some respect as to standing, a defendant moving to dismiss a complaint under CPLR 3211(a)(1) and (3) is not relieved of its own independent and affirmative burden of establishing the lack of standing under all potential bases, whether by direct privity, physical possession of the note, or valid assignment.
The defendants also failed to demonstrate, for CPLR 3211(a)(7) purposes, that the plaintiff failed to state a cause of action. The allegations contained within the four corners of the complaint, which must be deemed to be true (see Leon v Martinez, 84 NY2d at 87-88; Phoenix Life Ins. Co. v Town of Oyster Bay, 186 AD3d at 765), and which need not allege standing, were sufficient to state a cause of action to foreclose upon a mortgage. Further, the defendants' evidence failed to sufficiently demonstrate the absence of standing, for reasons already set forth.
IV. The Supreme Court Did Not Err in Failing to Direct Dismissal of the Complaint for Noncompliance with CPLR 3012-b
The defendants argue that the Supreme Court erred in its order dated March 4, 2016, in failing to direct dismissal of the complaint insofar as asserted against them on the ground that counsel's certificate of merit was defective under CPLR 3012-b. The defendants specifically argued that the certificate did not identify by name the plaintiff's representative(s) who were consulted by counsel, and failed to expressly state that the plaintiff was the creditor entitled to enforce its rights under the relevant documents (see CPLR 3012-b[a]).
In opposition to the defendants' motion to dismiss, the plaintiff's counsel filed an amended certificate of merit dated January 21, 2015, which was brought to the attention of the Supreme Court in the submitted papers. The amended certificate cured the technical defects that had been raised by the defendants.
As argued in the plaintiff's brief, CPLR 2001 permits the court, at any stage in an action, to permit a mistake, omission, defect, or irregularity to be corrected upon terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect, or irregularity shall be disregarded (see Matter of Tagliaferri v Weiler, 1 NY3d 605, 606; Avalon Gardens Rehabilitation & Health Care Ctr., LLC v Morsello, 97 AD3d 611, 612). We agree with the plaintiff that, under the circumstances of this case, the technical infirmities with the language of the original certificate of merit caused no prejudice to any party and therefore were, and are, correctable under the grace provisions of CPLR 2001 (see LaSalle Bank N.A. v Lopez, 168 AD3d 697, 700 [under former administrative order]; HSBC Bank USA, N.A. v Dalessio, 137 AD3d 860, 862 [same]; U.S. Bank N.A. v Eaddy, 109 AD3d 908, 910 [same]).
Moreover, to the extent that CPLR 3012-b(e) permits the court, in the exercise of its discretion, to dismiss a complaint or make such final or other conditional order with regard to such failure as is just, there must be a showing of willful noncompliance with the statute. No willful violation of the statute is evidenced in this record (see Deutsche Bank Natl. Trust Co. v Logan, 183 AD3d 660).
V. The Branch of the Defendants' Motion which was for Leave to Reargue
In support of that branch of their motion which was for leave to reargue, the defendants contended, inter alia, that the note accompanying the certificate of merit was deficient, and that the plaintiff failed to demonstrate that J.P. Morgan had acquired physical possession of the note in order to transfer it to the plaintiff. The appeal from so much of the order dated October 31, 2018, as denied that branch of the defendants' motion which was for leave to reargue must be dismissed as the denial of a motion for leave to reargue is not appealable (see HSBC Bank USA, N.A. v Janvier, 187 AD3d 999).
VI. The Branch of the Defendants' Motion which was for Leave to Renew
In support of that branch of the motion which was for leave to renew, the defendants asserted that the copy of the note indorsed in blank, which the plaintiff submitted for the first time in support of its motion for summary judgment, demonstrated that the plaintiff did not have standing when it commenced the action.
It is true that the plaintiff did not attach the copy of the note indorsed in blank to the complaint or the certificate of merit, and did not submit it in support of its opposition to the defendants' initial motion to dismiss. However, these facts, as proffered by the defendants in support of that branch of their motion which was for leave to renew, would not have changed the result with respect to the denial of their motion to dismiss. The indorsement in blank was on the note dated March 26, 2007. The defendants, as the moving parties, bore the burden of establishing that the [*8]indorsement in blank was not placed upon the note until some time after the commencement of the action—a burden they could not address, much less meet, absent discovery on the issue or an admission from the plaintiff. Thus, the Supreme Court properly did not grant renewal (see CPLR 2221[e][2]; U.S. Bank N.A. v Aorta, 176 AD3d 757).
VII. Attorneys' Fees
The defendants' request for an award of attorneys' fees under Real Property Law § 282, raised for the first time on appeal, is not properly before this Court (see Flagstar Bank, FSB v Titus, 120 AD3d 469, 470).
VIII. Miscellaneous
The defendants argued in support of their initial motion to dismiss, and in support of their motion for leave to reargue and renew, that the plaintiff's assignment was defective because MERS, which was merely a nominee of Fieldstone, could not validly assign the note to J.P Morgan (see Bank of N.Y. v Silverberg, 86 AD3d at 281; see also Filan v Dellaria, 144 AD3d 967, 975). This issue is academic because, even if the defendants' argument has merit, it does not change the fact that the defendants failed to establish in their moving papers, as was their burden, that J.P. Morgan did not have physical possession of the note at the time of its assignment to the plaintiff.
The defendants' remaining contentions either are without merit or have been rendered academic by our determination.
In light of the foregoing, the order dated March 4, 2016, is affirmed, the appeal from so much of the order dated October 31, 2018, as denied that branch of the defendants' motion which was for leave to reargue is dismissed, as no appeal lies from an order denying reargument, and the order dated October 31, 2018, is affirmed insofar as reviewed.
LASALLE, P.J., and CONNOLLY, J., concur.
ORDERED that the order dated March 4, 2016, is affirmed; and it is further,
ORDERED that the appeal from so much of the order dated October 31, 2018, as denied that branch of the motion of the defendants Joanne Matamoro and Andreas Jennings which was for leave to reargue is dismissed, as no appeal lies from an order denying reargument; and it is further,
ORDERED that the order dated October 31, 2018, is affirmed insofar as reviewed; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
BARROS, J., concurs in part and dissents in part, and votes to reverse the order dated March 4, 2016, on the law, and grant the motion of the defendants Joanne Matamoro and Andreas Jennings pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against them, and to dismiss the appeal from the order dated October 31, 2018, with the following memorandum:
CPLR 3012-b statutorily mandates that, upon commencement of a mortgage foreclosure action, the plaintiff furnish all documentation underpinning its claim that it has standing to enforce the note. Specifically, the statute requires submission of "a copy of the mortgage, security agreement and note or bond underlying the mortgage executed by defendant and all instruments of assignment, if any, and any other instrument of indebtedness including any modification, extension, and consolidation" (CPLR 3012-b[a]). Contrary to the determination of my colleagues in the majority, this obligation is not merely ethical, but rather serves the legislative purpose of expediting the resolution of mortgage foreclosure actions by having documentation in place to resolve any issue regarding the plaintiff's standing at the outset of litigation
Where, as here, defendants move to dismiss the complaint for lack of standing under CPLR 3211(a)(3), and submit all of the documentation disclosed by the plaintiff under CPLR 3012-b, and such documentation evinces that the plaintiff lacks standing, the defendants have met their prima facie burden on their motion to dismiss under CPLR 3211(a)(3), and shifted the burden to the plaintiff, who has exclusive possession of the relevant documents, to raise a question of fact. As set forth herein, the defendants Joanne Matamoro and Andreas Jennings (hereinafter together the defendants) met their prima facie burden on their motion to dismiss, and the plaintiff failed to raise [*9]a question of fact. Therefore, the Supreme Court should have granted the defendants' motion to dismiss the complaint insofar as asserted against them.
I. CPLR 3012-b
"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208; see People v Iverson, 37 NY3d 98, 103). "Accordingly, courts look first to the statutory text, which is the clearest indicator of legislative intent" (People v Iverson, 37 NY3d at 103 [internal quotation marks omitted]; see Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721). A court may also look to the "purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Town of Aurora v Village of E. Aurora, 32 NY3d 366, 372 [internal quotation marks omitted]; see People v Badji, 36 NY3d 393, 399; Riley v County of Broome, 95 NY2d 455, 463). A court should "give the statute a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions" (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420; see People v Iverson, 37 NY3d at 103-104).
CPLR 3012-b requires the plaintiff's attorney to certify that, upon review of instruments and documents, and upon consultation with an identified representative of the plaintiff, there is a "reasonable basis for the commencement of such action and that the plaintiff is currently the creditor entitled to enforce rights under such documents" (CPLR 3012-b[a] [emphasis added]). Critically, for purposes of this appeal, CPLR 3012-b(a) requires the plaintiff to furnish to the court, by attaching to the complaint or the attorney's certificate, "a copy of the mortgage, security agreement and note or bond underlying the mortgage executed by defendant and all instruments of assignment, if any, and any other instrument of indebtedness." "If a plaintiff willfully fails to provide" (CPLR 3012-b[e]) such documentation, the court may impose a penalty under CPLR 3012-b(e), including dismissal of the complaint without prejudice.
By enacting CPLR 3012-b, the Legislature provided defendants with access to the documents underpinning the plaintiff's claim of standing such that the standing issue may be resolved even before defendants interpose a responsive pleading. Defendants need not answer a complaint and make demands upon the plaintiff through CPLR article 31 disclosure (see CPLR 3120) for the same documentation that the plaintiff is already statutorily mandated to supply through CPLR 3012-b.
A review of the statute's legislative history evinces that one of the principal purposes of CPLR 3012-b is to enable the resolution of the issue of a plaintiff's standing at the earliest possible time so that homeowners in foreclosure may benefit from mandatory settlement conferences. As explained in the New York State Senate Introducer's Memorandum in Support, CPLR 3012-b was introduced at the request of the Chief Judge of the State of New York and the Attorney General to "create a procedure whereby the plaintiff lender's attorney must take certain steps to ascertain that his or her client has standing to maintain the action[,] [s]pecifically, before commencing such an action, he or she must be assured that the plaintiff . . . holds the instrument of indebtedness in the action" (Senate Introducer's Mem in Support, Bill Jacket, L 2013, ch 306 at 11). An attorney's certificate alone, however, is not sufficient to meet the obligation. The statute further requires that the plaintiff attach all relevant instruments of indebtedness and assignment to either the complaint or the attorney's certificate (see id.)
The Memorandum states that, "in addition to helping the bar by clarifying in statute the plaintiff['s] attorney's obligation to the court in a residential foreclosure action, this measure is an appropriate public policy response to the crises in foreclosure cases . . . to ensure the integrity of the mortgage foreclosure process and eliminate the cases brought without standing or merit" (id. [emphasis added]). The statute was intended to (1) "supply the necessary ingredient to ensure participation by the parties in the mandatory foreclosure [settlement] conference with the court" (id.); (2) "prevent completely the problem of 'shadow dockets' in residential foreclosure actions, a problem unforeseen at the time the . . . affirmation[ ] rule was promulgated by administrative order" (id.); and (3) give "the trial court . . . reasonable assurance that all of the instruments of indebtedness underpinning these actions, and all instruments of assignment, if any, are in place at the commencement of the action" (id.; see Mem in Support, Bill Jacket, L 2013, ch 306 at 24).
In a letter to New York's Governor, the Chair of the New York State Assembly's Judiciary Committee, who sponsored the bill, explained that plaintiffs' attorneys have filed thousands of residential foreclosure cases without pursuing them, "leaving tens of thousands of [*10]homeowners in a state of limbo depriving them of the settlement conferences to which they are entitled under existing state law" (Correspondence of Helene E. Weinstein, dated July 19, 2013, Bill Jacket, L 2013, ch 306 at 16-17). The Chair explained that, while these cases were pending on this "shadow docket," interest and fees accrued on the loan, which further hampered homeowners' ability to secure loan modifications (id. at 17). By requiring, upon commencement of the action, plaintiffs to furnish "essential documents that show ownership of the loan to establish the plaintiff's standing to foreclose under New York Law" (id.), the bill was aimed at reducing the "tremendous delay" in the resolution of mortgage foreclosure cases in this State (id.; see US Bank N.A. v Nelson, 36 NY3d 998, 1000-1001 [Wilson, J., concurring]).
Accordingly, the statutory text and legislative history evince that CPLR 3012-b was intended to not only impose an ethical obligation upon attorneys to review documents and consult with clients to ensure a good faith basis for commencing the action, as my colleagues maintain, but also to ensure that the plaintiffs have all the instruments of indebtedness and assignments in place upon commencement (see CPLR 3012-b[e]) so as to enable the expedient resolution of the standing issue, which the Legislature deemed to be a root cause of delay in mortgage foreclosure cases in this State. Notably, banking institutions, such as the plaintiff, may only prosecute an action through an attorney (see CPLR 320). Thus, CPLR 3012-b achieves its purposes by imposing obligations upon the plaintiff's attorney (see CPLR 3012-b[a], [c]), who is the plaintiff's representative before the court, as well as upon the plaintiff itself (see CPLR 3012-b[a], [e]).
Given the mandates of CPLR 3012-b, issues pertaining to the plaintiff's standing are ripe for judicial resolution soon after commencement of the action either in a motion pursuant to CPLR 3211(a)(3) or a motion pursuant to CPLR 3012-b, or both. Where, as here, the plaintiff's counsel has attached documents to her certificate purporting to comply with the requirement that all of the instruments of indebtedness and assignments have been provided to the court, a defendant challenging the plaintiff's standing need rely only upon those documents.
Contrary to the analysis of my colleagues in the majority, there is nothing in the text or legislative history suggesting that the Legislature sought to make the statute less rigorous than the administrative orders that it replaced by having the plaintiff's attorney file a certificate instead of an affirmation, or by giving the plaintiff a choice of attaching documentation to the complaint or the attorney's certificate. As set forth in the legislative history, the overriding statutory purpose is that the plaintiff's documentation be in place upon commencement of the action, and all the provisions in CPLR 3012-b further that overarching goal.
The construction of CPLR 3012-b advanced by my colleagues in the majority undermines the central purpose of the statute by allowing issues regarding the plaintiff's standing to fester, despite the defendants' diligent attempts to have the issue expeditiously resolved. Indeed, here, the defendants promptly raised standing in their pre-answer motion to dismiss, and in a timely answer. As recognized in the legislative history, unresolved standing issues doom mandatory settlement conferences and waste limited judicial resources since homeowners cannot be expected to negotiate a loan modification with a plaintiff who cannot show that it is the proper creditor entitled to payment under the note. The resulting delays harm homeowners by allowing interest and fees to accrue on the balance of the loan, making it more difficult for homeowners to obtain loan modifications.
Further, the construction of CPLR 3012-b advanced by my colleagues in the majority defeats the statute by treating the plaintiff's failure to comply with it as a mere ethical deficiency for which there is no practical consequence. Notably, here, in August 2017, nearly three years after the plaintiff's counsel certified that all of the documents evincing the plaintiff's standing had been filed with the court, the plaintiff miraculously produced a note indorsed in blank that it claimed was in its possession at the time of commencement. The plaintiff only submitted this note in support of its own motion for summary judgment, and not pursuant to the mandates of CPLR 3012-b. Despite the requirements of CPLR 3012-b and the defendants' prior motion practice challenging the plaintiff's standing, my colleagues in the majority treat the plaintiff's delay as inconsequential because the defendants had not proved willful noncompliance. Given the plaintiff's protracted unexplained delay in furnishing a note that it claimed had been in its physical possession for over three years, my colleagues in the majority leave open the question how a court could ever find willful noncompliance in accordance with CPLR 3012-b(e).
In sum, in determining whether the plaintiff has standing in a mortgage foreclosure action, courts need rely only upon the documentation supplied by the plaintiff pursuant to CPLR [*11]3012-b, which if attached to the complaint have become part of the complaint (see CPLR 3014), or have otherwise been certified by the plaintiff's counsel as representing all the documentation underpinning the plaintiff's claim of standing.
II. CPLR 3211(a)(3)
On a motion pursuant to CPLR 3211(a)(3) to dismiss a complaint based upon the plaintiff's alleged lack of standing, defendants must demonstrate, prima facie, the plaintiff's lack of standing as a matter of law (see Bank of N.Y. Mellon v Chamoula, 170 AD3d 788, 789-790; New York Community Bank v McClendon, 138 AD3d 805, 806). If the defendants meet their prima facie burden, the burden shifts to the plaintiff to raise a question of fact as to its standing (see Deutsche Bank Trust Co. Ams. v Vitellas, 131 AD3d 52, 60; HSBC Bank USA, N.A. v Roumiantseva, 130 AD3d 983, 984).
"[T]he note, and not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law" (Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361). A note is a negotiable instrument within the meaning of the Uniform Commercial Code (hereinafter UCC) (see HSBC Bank USA, N.A. v Carchi, 177 AD3d 710, 712; Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d 1020, 1022). "Negotiation" is the word used to describe the transfer of a negotiable instrument, such as a note, in such form that the transferee becomes a holder (UCC 3-202[1]; see Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d at 1023). "The mechanism of negotiation depends upon the form in which the instrument was originally made or drawn, or in which it has been subsequently indorsed" (Bank of N.Y. Mellon v Deane, 41 Misc 3d 494, 499 [Sup Ct, Kings County]; see Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d at 1023).
A "holder" of a note, within the meaning of the UCC, includes a person in possession of the note that is payable either to the bearer or to an identified person that is the person in possession (UCC 1-201[b][21][A]; see Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d at 1023; Bayview Loan Servicing, LLC v Kelly, 166 AD3d 843, 845). With limited exception, the holder of a note, whether or not he or she is the owner, may negotiate it, and discharge it or enforce payment in his or her own name (see UCC 3-301; Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d at 1023).
Where, as here, the note is payable to order, "it is negotiated by delivery with any necessary indorsement" (UCC 3-202[1]). The UCC recognizes two types of indorsements. "A special indorsement specifies the person to whom or to whose order it makes the instrument payable" (UCC 3-204[1]). "By contrast, '[a]n indorsement in blank specifies no particular indorsee and may consist of a mere signature'" (Bank of N.Y. Mellon Trust Co. v Obadia, 176 AD3d at 1023, quoting UCC 3-204[2]). An instrument payable to order and indorsed in blank, which is not the case here, "becomes payable to bearer and may be negotiated by delivery alone until specially indorsed" (UCC 3-204[2]). "If the [i]ndorsement is not on the note itself, it must be on an allonge" (U.S. Bank N.A. v Moulton, 179 AD3d 734, 737).
Here, in support of their motion to dismiss, the defendants submitted documents, including the note and mortgage and the chain of assignments that were attached to the plaintiff's attorney's certificate of merit, as representing all documentation underpinning the plaintiff's claim of standing (see CPLR 3012-b). The note is payable "to the order of" Fieldstone Mortgage Company, Inc. (hereinafter Fieldstone). Since the note is payable to order, its negotiation to the plaintiff required "delivery with any necessary indorsement" (UCC 3-202[1]). However, the note does not contain any indorsement, either special or blank (see UCC 3-204), evincing a negotiation from Fieldstone to any other person or entity (see UCC 3-202[1]; see also HSBC Bank USA, N.A. v Roumiantseva, 130 AD3d at 984-985). As such, the attached note is payable to nonparty Fieldstone, not the plaintiff.
"Where there is no allonge or note that is either [i]ndorsed in blank or specially [i]ndorsed to the plaintiff, mere physical possession of a note at the [time of] commencement of a foreclosure action is insufficient to confer standing or to make a plaintiff the lawful holder of a negotiable instrument for the purposes of enforcing the note" (U.S. Bank N.A. v Moulton, 179 AD3d at 737; see McCormack v Maloney, 160 AD3d 1098, 1099-1100). Thus, contrary to the Supreme Court's determination, the plaintiff's mere physical possession of the note payable to nonparty Fieldstone is insufficient to confer standing (see UCC 3-202[1]; U.S. Bank N.A. v Moulton, 179 AD3d at 736).
Moreover, even assuming that a chain of assignments may establish standing in the absence of proof that the plaintiff is the "holder" of the note within the meaning of UCC [*12]1-201(b)(21)(A), the chain of assignments here also evinces, prima facie, the plaintiff's lack of standing. In this regard, the plaintiff asserts that it acquired the note through a series of two assignments beginning with an assignment by Mortgage Electronic Registration Systems, Inc. (hereinafter MERS), to nonparty J.P. Morgan Mortgage Acquisition Corp. (hereinafter J.P. Morgan), and then a purported assignment from J.P. Morgan to the plaintiff. However, there is no evidence that MERS, as mortgagee of record and nominee of the original lender, ever became a holder of the note, or had authority to assign the note to J.P. Morgan (see Filan v Dellaria, 144 AD3d 967, 975; Citibank, N.A. v Herman, 125 AD3d 587, 589; Bank of N.Y. v Silverberg, 86 AD3d 274, 281). Since the defendants' submission of the plaintiff's own documents underpinning its claim of standing evince that the plaintiff lacked standing, the burden shifted to the plaintiff to raise a question of fact.
In opposition to the motion to dismiss, the plaintiff merely submitted an affidavit from an employee of its loan servicer, along with the same chain of assignments referred to above. Thus, the plaintiff, which is in exclusive possession of the documentation of its own standing, and which has the statutory obligation to provide all such documentation to the court upon commencement of the action (see CPLR 3012-b), failed to proffer evidence sufficient to raise a question of fact as to its standing (see Citibank, N.A. v Herman, 125 AD3d at 589; Bank of N.Y. v Silverberg, 86 AD3d at 281).
Perhaps recognizing that its documentation was not in place upon commencement, the plaintiff contended in the Supreme Court that it should be "afforded an opportunity" to obtain evidence of its own standing. This contention is meritless inasmuch as CPLR 3012-b required the plaintiff upon commencement to attach to either the complaint or the attorney's certificate of merit all documentation supporting its assertion that it is "currently the creditor entitled to enforce rights" under the note and mortgage (id.). In other words, the plaintiff should have obtained whatever documents would evince its standing, i.e., the relevant note, before it commenced the action.
Accordingly, the Supreme Court should have granted the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against them. In view of the foregoing, the remaining issues raised on these appeals are academic.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court